**Mark Andrew TELTHORSTER,
Petitioner,**

v.

**Ollie Lee TENNELL, Respondent.**

No. 01–0074.

Supreme Court of Texas.

Argued Dec. 15, 2001.

Decided June 27, 2002.

---

William S. Helfand, Kevin D. Jewell, Mangenheim, Bateman & Helfand, P.L.L.C., Steven Jon Knight, Chamberlain Hrdlicka White Williams & Martin, Houston, for Petitioner.

Matthew J.M. Prebeg, Glover, Lewis & Prebeg, Houston, for Respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice OWEN, Justice HANKINSON, Justice JEFFERSON, and Justice RODRIGUEZ joined.

In this official-immunity case, we must determine the good-faith standard to apply when a suspect sues a police officer for injuries sustained during an arrest. In *City of Lancaster v. Chambers,* 883 S.W.2d 650, 656 (Tex.1994), we held that an officer pursuing a suspect acts in good faith if a reasonably prudent officer could have believed that the pursuit should have been continued, taking into account both the need for immediate police intervention and the risk of harm to the public. In *Wadewitz v. Montgomery,* 951 S.W.2d 464, 466–67 (Tex.1997), we extended that test to an officer's high-speed emergency response and elaborated on *Chambers'* need and risk elements by announcing specific factors that officers must consider to show that they acted in good faith.

Here, we must decide whether the *Wadewitz* particularized need/risk assessment is required when a suspect sues for injuries sustained during an arrest. We conclude that it is not, because the public-safety concerns underlying that assessment are not implicated. When a suspect sues for injuries sustained during an ar-

rest, official immunity's good-faith element requires the defendant to show that a reasonably prudent officer, under the same or similar circumstances, could have believed that the disputed conduct was justified based on the information the officer possessed when the conduct occurred. To controvert, the nonmovant must show that no reasonable officer under similar circumstances could have believed that the facts were such that they justified the disputed conduct. Applying this standard, we hold that the officer-defendant in this case is entitled to official immunity because he conclusively proved, and the plaintiff failed to controvert, that he acted in good faith. Accordingly, we reverse the court of appeals' judgment and render judgment that the plaintiff take nothing.

## I Background

Officers Rob Bailey and Mark Telthorster of the Navasota Police Department were on routine patrol when they observed Ollie Tennell commit traffic violations, including failure to properly signal a turn. The officers activated their sirens in an effort to pull Tennell over, but he accelerated and refused to stop. A high-speed pursuit ensued until Tennell finally stopped at his home in the City of Bryan. Tennell pulled up to his house and beeped his horn, apparently to attract the attention of those inside. Both officers drew their guns. Officer Bailey ordered Tennell to step out of his truck, and Tennell complied. While Officer Telthorster kept his gun drawn, Officer Bailey holstered his weapon, grabbed Tennell's upper right arm, and placed Tennell face-down on the ground. Officer Telthorster approached from behind to help Bailey handcuff Tennell, who appeared to Telthorster to be struggling with Officer Bailey. With his gun still drawn, Telthorster cuffed Tennell's left hand. Officer Telthorster was attempting to bring Tennell's hands together when his gun accidentally discharged and a bullet ricocheted off Officer Bailey's hand and grazed Tennell's back. Although Tennell turned out to be unarmed, Officer Telthorster testified that during the seconds before his gun discharged he was unable to determine with certainty whether Tennell was concealing a weapon.

Tennell sued Officer Telthorster and the City of Navasota for his back injury, alleging that Telthorster was negligent in handling his gun and that the city was vicariously liable for his negligence. Tennell also alleged that Telthorster acted with malice because he knew his actions involved an extreme degree of risk, but he nevertheless proceeded in conscious indifference to the rights of others. The city was subsequently nonsuited and is not a party here. Officer Telthorster moved for summary judgment, asserting official immunity. The trial court granted Telthorster's motion, and Tennell appealed.

The only issue before the court of appeals was whether Officer Telthorster conclusively established that he acted in good faith during the attempted arrest. The court of appeals applied the particularized need/risk standard that we announced in *Chambers* and elaborated on in *Wadewitz*. The court held that Telthorster's summary judgment proof failed to conclusively establish his good faith and therefore he was not entitled to summary judgment on his official-immunity defense. 84 S.W.3d 1. We granted review to consider the good-faith standard that applies when a suspect sues for injuries sustained during an arrest.

## II Good Faith

 Official immunity is an affirmative defense that shields governmental employees from personal liability so that they

are encouraged to vigorously perform their official duties. *Kassen v. Hatley,* 887 S.W.2d 4, 8 (Tex.1994). A governmental employee is entitled to official immunity for (1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith. *Chambers,* 883 S.W.2d at 653; *see also DeWitt v. Harris County,* 904 S.W.2d 650, 651–52 (Tex.1995); *Kassen,* 887 S.W.2d at 8–9; *K.D.F. v. Rex,* 878 S.W.2d 589, 597 (Tex. 1994). To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these elements. *See University of Houston v. Clark,* 38 S.W.3d 578, 580 (Tex.2000). In deciding whether an employee's summary judgment proof conclusively establishes the official-immunity defense, we must determine whether there are disputed facts material to its elements. In this case, the parties do not dispute that at the time of the incident Officer Telthorster was performing a discretionary duty within the scope of his employment. But they do dispute whether he was acting in good faith.

In *Chambers,* we considered in some detail official immunity's good-faith element. *See Chambers,* 883 S.W.2d at 656–57. *Chambers* involved a high-speed police pursuit that resulted in the death of a passenger who was riding with the fleeing suspect. *Id.* at 652. We sought to articulate a good-faith standard that would strike the proper balance between two competing interests: the threat of severely hampering police officers' discretion by imposing civil liability for their mistakes, and the rights of bystanders and other innocent parties that may be trampled by an officer's gross disregard for public safety. *Id.* at 656 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 240, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). We held that an officer

acts in good faith *in a pursuit case* if: a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

*Id.* (emphasis added). This test's "could have believed" aspect requires an officer to prove only that a "reasonably prudent officer might have believed that the pursuit should have been continued." *Id.* at 656–57. If the officer meets this burden, the nonmovant must present evidence that " 'no reasonable person in the [officer's] position could have thought the facts were such that they justified [the officer's] acts.' " *Id.* at 657 (quoting *Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1557 (11th Cir.1993)).

In *Wadewitz,* we adhered to *Chambers'* general good-faith framework. 951 S.W.2d at 467. But we elaborated on the need and risk elements and applied them to an emergency-response situation involving a police officer who, in responding to an emergency call, collided with a third-party motorist. *Id.* We articulated specific factors for courts to consider in determining whether an officer sufficiently assessed both need and risk for the purpose of establishing good faith:

The "need" aspect of the test refers to the urgency of the circumstances requiring police intervention.... [N]eed is determined by factors such as the seriousness of the crime or accident to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith, on the other hand, refers to the countervailing public safety concerns: the nature and

severity of harm that the officer's actions could cause (including injuries to bystanders as well as the possibility that an accident would prevent the officer from reaching the scene of the emergency), the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer.

*Id.* In *Clark*, we applied these factors to assess an officer's good faith in a high-speed police pursuit. 38 S.W.3d at 581–83. We did so because "pursuing a suspect and responding to an emergency involve the same general risk to the public—collision with a third party." *Id.* at 583. We held that a police officer's summary judgment proof does not offer a suitable basis for determining good faith unless it sufficiently assesses the *Wadewitz* need/risk factors. *Id.* at 584–85.

### III Good Faith in this Case

The parties here agree that, as in high-speed pursuit and emergency-response cases, a police officer accomplishing an arrest is entitled to official immunity's protection if its three elements are established. But they disagree, and we have never considered, how the good-faith element should be assessed when a suspect sues for injuries sustained during an arrest. The court of appeals applied the *Wadewitz* particularized need/risk analysis and concluded that Officer Telthorster's summary judgment proof did not conclusively establish good faith. 84 S.W.3d at 6. Specifically, the court noted that the proof did not discuss the need for Officer Telthorster to complete Tennell's handcuffing with his gun drawn, considering Officer Bailey's conclusion that Tennell was unarmed, not attempting to flee, and presented no risk of harm to anyone. *Id.* The court further found the summary judgment proof deficient for failure to discuss alternative courses of action available to

Officer Telthorster and whether Officer Bailey could have completed the handcuffing process without assistance. *Id.* at 6. Nor, the court of appeals held, did the evidence adequately evaluate the risk element of good faith by discussing the nature and severity of harm Officer Telthorster's actions could have caused and the likelihood that harm would have occurred. *Id.* The court determined that a drawn weapon created a likelihood of harm to potential bystanders and that an officer must adequately assess this risk in order to establish good faith. *Id.* Concluding that Officer Telthorster's summary judgment proof failed to adequately assess the need/risk factors, the court of appeals held that summary judgment was improper.

Tennell argues that the court of appeals properly applied the *Wadewitz* factors to assess Officer Telthorster's good faith in accomplishing Tennell's arrest, and that other cases have applied the need/risk analysis to arrest situations. *See Bridges v. Robinson*, 20 S.W.3d 104, 111–12 (Tex. App.-Houston [14th Dist.] 2000, no pet.); *Geick v. Zigler*, 978 S.W.2d 261, 265 (Tex. App.-Houston [14th Dist.] 1998, no pet.). According to Tennell, the need/risk analysis gives useful content to "good faith," thus aiding courts in determining whether an officer acted appropriately in a particular case.

Officer Telthorster, on the other hand, contends that the *Wadewitz* particularized need/risk analysis was designed to protect innocent bystanders during a high-speed pursuit or emergency response, and that no such policy concerns are implicated here because Tennell's arrest did not endanger the general public. Thus, Telthorster argues, a particularized need/risk assessment is not appropriate to evaluate his good faith in this case. *See, e.g., City of San Antonio v. Garcia*, 974 S.W.2d 756, 758 (Tex.App.-San Antonio 1998, no pet.)

(defining good faith more generally in an arrest case without reference to the need/risk elements); *Rhodes v. Torres*, 901 S.W.2d 794, 797–99 (Tex.App.-Houston [14th Dist.] 1995, no pet.) (same); *City of Dallas v. Half Price Books, Records, Magazines, Inc.*, 883 S.W.2d 374, 376 (Tex. App.-Dallas 1994, no pet.) (same). We agree with Officer Telthorster because the public policy interest underlying the need/risk analysis is not implicated in this case.

## A. Public Policy Underlying Official Immunity

■ As we have said, "[t]he public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions." *Kassen*, 887 S.W.2d at 8. Thus, official immunity is designed to protect public officials from being forced to defend their decisions that were reasonable when made, but upon which hindsight has cast a negative light. Police officers' particular need for immunity's protection is well-recognized: "[n]owhere else in public service is official immunity more appropriate or necessary than in police work. In their routine work, police officers must be free to make split-second judgments ... based on their experience and training, without fear of personal liability." *Travis v. City of Mesquite*, 830 S.W.2d 94, 103 (Tex.1992) (Cornyn, J., concurring). If police officers were subject to liability for every mistake, the constant threat of suit could "dampen the ardor of all but the most resolute, or the most irresponsible" officers. *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

These public-policy concerns in large part underlie the test that we articulated in *Chambers*. *See Chambers*, 883 S.W.2d at 656–57. In *Chambers*, we said that courts should focus on what the defendant "could have believed," that is, on the reasonableness of the officer's perception under the circumstances surrounding the incident, not on the facts as they appear through the clarity of hindsight. *See Chambers*, 883 S.W.2d at 656; *see also Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir.1994). In sum, our approach to good faith has been shaped by "a desire to avoid overdeterrence of energetic law enforcement." *Rowland*, 41 F.3d at 172.

## B. Additional Policy Concerns Underlying the Need/Risk Test

In *Chambers*, *Wadewitz*, and *Clark*, we recognized the importance of energetic law enforcement, but we also had to balance an important countervailing public-policy concern: the inherent risks that high-speed driving poses to those utilizing public streets and highways.[1] To better protect "bystanders or other innocent parties" in a high-speed pursuit situation, *Chambers* required a police officer to consider both the need to immediately apprehend a suspect and the risk posed to the general public.

---

1. In recent years, commentators have expressed concern about the risks to the general public that high-speed pursuits present. *See generally* Travis N. Jensen, Note, *Cooling the Hot Pursuit: Toward a Categorical Approach*, 73 IND. L.J. 1277, 1282–90 (1998) (discussing recent case law that has sought to provide greater protection to bystanders who are injured in high-speed pursuits); Seth Mydans, *Alarmed by Deaths in Car Chases, Police Curb High Speed Pursuits*, N.Y. TIMES, Dec. 26, 1992, at A1 (noting that high-speed pursuits cause hundreds of deaths each year). And various states' courts have expressed concern for bystanders who are injured by high-speed pursuits, holding that the government may be liable to such parties. *See, e.g., Robinson v. City of Detroit*, 462 Mich. 439, 613 N.W.2d 307, 314 (2000); *Haynes v. Hamilton County*, 883 S.W.2d 606, 611 (Tenn.1994); *City of Pinellas Park v. Brown*, 604 So.2d 1222, 1227 (Fla.1992).

*Chambers,* 883 S.W.2d at 656. To ensure that an officer's consideration was more than merely pro forma, *Wadewitz* went one step further by requiring the officer to particularly and meaningfully balance the need for police intervention in a given case against the countervailing public-safety concerns. *Wadewitz,* 951 S.W.2d at 467; *see Clark,* 38 S.W.3d at 586 (applying *Wadewitz* factors to an officer's high-speed emergency response because a risk to the general public "is present to some degree in every police pursuit"). Thus, the particularized need/risk factors were crafted in an attempt to tailor a test that would better weigh the risks that high-speed chases and responses pose to the general public.

### C. Public Policy and Good Faith in this Case

In this case, too, we must balance competing interests: the societal benefits that unflinching law enforcement provides and the right of citizens to recover for injuries arising from unreasonable conduct. *See Chambers,* 883 S.W.2d at 656. But here, when a suspect is injured during an arrest, the same public-policy concerns that caused us to formulate the particularized need/risk analysis are not implicated. The inherent risk to the general public that high-speed driving causes is not an issue. Nor is there evidence that the circumstances surrounding Tennell's arrest created a risk to bystanders or the public in general. Thus, we are not presented with the same " 'countervailing public safety concerns' " that we faced in *Chambers, Wadewitz,* and *Clark. Clark,* 38 S.W.3d at 581 (quoting *Wadewitz,* 951 S.W.2d at 467).

While the public-safety concerns that underlie the need/risk analysis are not as substantial here as in the high-speed pursuit context, official immunity's underlying purpose to encourage energetic law en-

forcement is. This purpose is most "salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances." *Rowland,* 41 F.3d at 172. During arrest situations, officers routinely are "forced to make split-second judgments ... in circumstances that are tense, uncertain, and rapidly evolving." *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Arresting officers often confront at close range suspects whose violent intentions and capabilities may not be readily apparent. A high risk of liability in such a situation would likely compel arresting officers to act hesitantly when immediate action is required, subjecting themselves and the public to unnecessary "risks, and seriously hamper[ing] their efforts to apprehend dangerous criminal suspects." *United States v. Merritt,* 695 F.2d 1263, 1274 (10th Cir.1982).

■ Based on these policy considerations, we hold that when an officer is engaged in an arrest that results in injury to the suspect, a particularized need/risk assessment is not compelled in light of official immunity's overriding purpose to reduce the threat that civil liability may deter arresting officers from acting with the "decisiveness and the judgment required by the public good." *Chambers,* 883 S.W.2d at 656. We disapprove of other courts of appeals' decisions to the extent that they applied the particularized need/risk analysis to claims brought by suspects injured during an arrest. *See Clement v. City of Plano,* 26 S.W.3d 544, 551 (Tex.App.-Dallas 2000, no pet.); *City of San Juan v. Gonzalez,* 22 S.W.3d 69, 72 (Tex.App.-Corpus Christi 2000, no pet.); *Bridges,* 20 S.W.3d at 111–12; *Geick,* 978 S.W.2d at 265.

■ Nevertheless, our holding does not relieve Officer Telthorster of the bur-

den to establish that he acted in good faith for purposes of invoking official immunity's protection. In this case, we believe that the *Chambers'* good-faith test, absent its need/risk component, strikes the appropriate balance. To establish good faith, Officer Telthorster must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *See Chambers*, 883 S.W.2d at 656–57. Officer Telthorster need not prove that it would have been unreasonable not to engage in the conduct, or that all reasonably prudent officers would have engaged in the same conduct. *See id.* at 657. Rather, he must prove only that a reasonably prudent officer, under similar circumstances, *might* have reached the same decision. *See id.* at 656–57. That Officer Telthorster was negligent will not defeat good faith; this test of good faith does not inquire into "what a reasonable person *would have done*," but into "what a reasonable officer *could have believed.*" *Wadewitz*, 951 S.W.2d at 467 n. 1 (citing *Chambers*, 883 S.W.2d at 661 n. 5).

 If Telthorster meets this burden, Tennell, to controvert, must do more than show that a reasonably prudent officer could have reached a different decision. *See Chambers*, 883 S.W.2d at 657. Instead, Tennell must offer evidence that no reasonable officer in Telthorster's position could have believed that the facts were such that they justified his conduct. *See id.* "[I]f officers of reasonable competence could disagree on this issue," the officer acted in good faith as a matter of law. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

 Tennell suggests that this test allows officers free rein and leaves those injured during an arrest without a remedy. On the contrary, good faith is not a me-chanical inquiry, but rather turns on the particular facts presented. When an officer exceeds the bounds of reasonableness, good faith cannot be shown, and the officer will not enjoy official immunity's protection. *Chambers*, 883 S.W.2d at 656–57. Thus, the public interest in deterring abusive police conduct and in compensating victims remains protected by the objective test that we announce today.

## IV The Summary Judgment Evidence

 Applying the good-faith test that we have articulated, we must examine the summary judgment proof to determine whether Officer Telthorster conclusively established that a reasonably prudent officer, under the same or similar circumstances, could have believed that keeping his gun drawn while attempting to hand-cuff Tennell was justified based on the information he possessed. We conclude that Officer Telthorster met this burden.

### A. Officer Telthorster's Proof

Officer Telthorster testified by deposition that during the high-speed chase he observed Tennell moving his free hand around inside the cab of his truck. When they finally arrived at Tennell's house, Tennell beeped his horn in an apparent attempt to attract the attention of those inside. When Tennell stepped out of his truck, Telthorster "couldn't see ... part of [Tennell's] side and front" and therefore "wasn't sure whether [Tennell] had a gun ... on him or not." While Tennell was face-down on the ground, Tennell appeared to be struggling with Officer Bailey. Officer Telthorster testified that he did not have time to determine what Tennell was trying to do because "this all happened within a few seconds."

In addition to his own testimony, Telthorster presented an affidavit from Officer Michael Patton, a law-enforcement

academy director and an officer with twenty years of experience. Patton testified that a reasonable officer would be instructed to consider the likelihood that force would be necessary to subdue a suspect who had led officers on a high-speed chase. Patton emphasized the situation's uncertainty, stating that pursuing officers cannot know a suspect's motivation to flee or whether a suspect, in continuing a "demonstrated resistance to arrest," might attempt to injure someone. In fact, Patton stated, such a suspect could be wanted for a serious crime and could be evading arrest for that reason. Thus, according to Patton,

> [u]nder the circumstances presented by Tennell's own actions, a reasonable officer would consider it appropriate for the police officers present to draw and have ready their firearms for the safety of the officers [and] the general public.... Indeed, at least one officer should, under such circumstances, keep a firearm unholstered and ready up until the time Mr. Tennell was secured by handcuffs or any other form of restraint and was searched for a weapon incidental to his arrest.

Patton determined that Officer Telthorster's "use of his gun under the facts of this incident was a reasonable exercise of his discretion, in accordance with standard officer training." Patton concluded that

> the discharge of [Telthorster's] firearm was an inadvertent and unexpected mistake which seems to have been caused during the struggle to handcuff the suspect. Although this accident caused some injury to Mr. Tennell, the occurrence of this accident does not demonstrate any impropriety in Officer Telthorster's conduct.

We believe that Officer Telthorster's testimony and Patton's affidavit conclusively demonstrate that a reasonably prudent officer might have decided to keep his gun drawn under circumstances similar to those presented in this case and therefore establish that Telthorster acted in good faith for official-immunity purposes. Tennell and the court of appeals focus on the fact that Tennell turned out to be unarmed and thus presented no risk of harm. 84 S.W.3d at 6. But that conclusion is unduly informed by hindsight. The proper focus is on whether a reasonable officer could have believed that the circumstances were such that Telthorster's conduct was justified based on the information he possessed at the time. *See Chambers,* 883 S.W.2d at 656–57; *see also Rowland,* 41 F.3d at 172 ("[T]he immunity inquiry must be filtered through the lens of the officer's perceptions at the time of the incident....").

Telthorster testified that during the seconds before the accident he could not be certain that Tennell was unarmed. Additionally, Patton's affidavit establishes that a reasonable officer, under the circumstances of this case, could have believed that his gun should have been drawn and ready to fire, at least up until Tennell had been handcuffed and searched for weapons. And given that Telthorster believed that Tennell, in moving his arms, was struggling with Officer Bailey, a reasonable officer, based on the facts that Telthorster perceived at the time, might have decided to help Officer Bailey handcuff Tennell. Under the uncertain and tense circumstances described, Patton concluded that the incident did not reveal any impropriety by Telthorster. We hold that Telthorster met his summary judgment burden to establish good faith.

### B. Tennell's Evidence

In order to controvert Officer Telthorster's proof, Tennell had to show that *no* reasonable officer in Telthorster's position could have believed that the circumstances

justified his conduct. Tennell failed to meet this burden. Tennell offered deposition testimony from Officer Telthorster's daytime supervisor, Officer Craig Wiesepape, and from Lieutenant Craig Lys of the Navasota Police Department. Lieutenant Lys testified that it is reasonable for an officer to draw a gun only when the officer has reason to fear for his or her own personal safety or the safety of someone else, or when the offender is suspected of possessing a deadly weapon. In response to the question whether it is reasonable for an officer to handcuff a suspect while holding a firearm, Officer Wiesepape testified that it depends on the situation and "what's happening."

Tennell's witnesses merely stated general conclusions without considering the particular facts of this case. *See Clark,* 38 S.W.3d at 578, 585–88 (summary judgment proof must discuss actual circumstances of the case). Although Lys stated that an officer should draw his weapon only when there is a safety concern, he did not establish that no reasonable officer could have held such a concern under the circumstances confronting Telthorster. *See Chambers,* 883 S.W.2d at 657. Nor did Tennell offer evidence establishing that no reasonable officer could have believed, under the circumstances, that it was reasonable for Telthorster to assist in handcuffing Tennell. *See id.* In fact, the summary judgment record contains subsequent affidavits from Lys and Wiesepape in which they acknowledge the particular facts confronting Officer Telthorster and conclude that he "acted reasonably on the evening that Tennell was arrested when [he] had his gun drawn during the apprehension of the suspect/Plaintiff." At most, Tennell raised a fact issue regarding Telthorster's negligence which, as we have said, is not enough to controvert Telthorster's good faith. *See id.*

## V Conclusion

We hold that when a suspect sues for injuries sustained during an arrest the officer-defendant, to establish his good faith for official-immunity purposes, must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. To controvert the defendant's good-faith evidence, the nonmovant must show more than that the defendant was negligent or that reasonably competent officers could disagree on the issue; instead, the nonmovant must show that no reasonably prudent officer could have believed that the defendant's conduct was justified under the circumstances presented. In this case, Officer Telthorster's summary judgment evidence conclusively established, and Tennell failed to controvert, that he acted in good faith. Accordingly, we reverse the court of appeals' judgment and render judgment that Tennell take nothing.

Justice ENOCH filed a concurring opinion, in which Justice HECHT and Justice BAKER joined.

Justice OWEN filed a concurring opinion.

Justice ENOCH filed a concurring opinion, in which Justice HECHT and Justice BAKER joined.

The sole issue in this official immunity case is whether Officer Mark Telthorster established as a matter of law that he acted in good faith when arresting Ollie Tennell. While I agree with the Court's conclusion that Telthorster did establish as a matter of law that he acted in good faith, I disagree with the Court's reasoning. I accordingly write separately, though I agree with the Court's judgment.

While Telthorster and another officer were arresting Tennell after a high-speed pursuit of Tennell had just ended, Telthorster's firearm accidentally discharged. The bullet from Telthorster's firearm ricocheted off the other officer's hand and into Tennell's back. Fortunately, Tennell was not seriously injured in the incident. Tennell nevertheless sued Telthorster for negligently handling the firearm; Tennell also alleged that Telthorster acted with malice.

Telthorster moved for summary judgment on Tennell's claims, asserting that he was entitled to official immunity. A governmental employee is entitled to official immunity for (1) the performance of discretionary duties, (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith.[1] Tennell does not dispute that, at the time of the incident, Telthorster was exercising a discretionary duty within the scope of his authority. Tennell contends only that Telthorster failed to establish as a matter of law that he acted in good faith in effecting the arrest.

Today, the Court holds that the need/risk assessment set forth in *Wadewitz v. Montgomery*[2] is not required for determining whether an officer acted in good faith in arresting a fleeing suspect.[3] I fully agree with that part of the Court's opinion. The Court, however, goes on to articulate a test for determining an officer's good faith based on *City of Lancaster v. Chambers*,[4] a case in which we sought to protect bystanders and other innocent parties from injuries sustained during an officer's high-speed pursuit of a suspect.[5] Based on *Chambers*, the Court holds that, to establish good faith in the arrest context, an officer must show that a reasonably prudent officer, under the same or similar circumstances, could have believed that the disputed conduct was justified based on the information the officer possessed when the conduct occurred.[6]

The Court's articulation of its test demonstrates the flaw in its reasoning. The Court fails to distinguish between when an arresting officer acts with negligence and when an arresting officer acts with intent. I don't think that the Court's test applies where the officer acts negligently. The Court relies on *Chambers* for its test. But *Chambers* based its good-faith test on federal cases discussing an officer's qualified immunity to claims brought under 42 U.S.C. § 1983.[7] And negligent conduct alone, absent any intentional government conduct, cannot form the basis of a section 1983 claim.[8] Accordingly, the cases *Chambers* relied on involved more than merely negligent conduct by the officer, thereby implicating qualified immunity.

I recognize that the *Chambers* case involved negligence claims, and the Court applied the official immunity doctrine there. But the suspect was not the one asserting those claims. As mentioned, the *Chambers* Court was concerned about protecting bystanders and other innocent par-

---

1. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex.2000); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994).

2. 951 S.W.2d 464, 466–67 (Tex.1997).

3. —— S.W.3d ——.

4. 883 S.W.2d at 656.

5. *Id.*

6. —— S.W.3d ——.

7. *Chambers*, 883 S.W.2d at 656.

8. *See Daniels v. Williams*, 474 U.S. 327, 331–34, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Brooks v. Ctr. for Healthcare Servs.*, 981 S.W.2d 279, 284 (Tex.App.-San Antonio 1998, no writ); *Emerson v. Borland*, 927 S.W.2d 709, 718 (Tex.App.-Austin 1996, writ denied).

ties during high-speed police pursuits.[9] As the Court today correctly recognizes, those concerns are not implicated here.[10]

I would hold that when a suspect contends only that an officer's conduct in effecting an arrest is negligent, the officer's good faith is established as a matter of law. This is consistent with the position taken by the Restatement (Second) of Torts. Section 118 of the Restatement (Second) of Torts provides: "The use of force against another for the purpose of effecting his arrest and the arrest thereby effected are privileged if all the conditions stated in §§ 119–132, in so far as they are applicable, exist."[11] Of those sections, only section 132 is relevant here, because it considers the amount of force an officer uses. Section 132 provides:

> The use of force against another for the purpose of effecting the arrest or recapture of the other, or for maintaining the actor's custody of him, is not privileged if the means employed are in excess of those which the actor reasonably believes to be necessary.[12]

While this section suggests a subjective standard for determining whether an arresting officer used excessive force. I think it more consistent to require the *Chambers* standard that the officer's good faith be established by objectively reasonable behavior. But, regardless of the standard applied, sections 118 and 132, read together, demonstrate that when the suspect fails to allege that the officer used excessive force in effecting the suspect's arrest, the officer's use of force is privileged. It follows from that premise that,

unless the suspect contends that the officer used excessive force in effecting the arrest, the officer's good faith in arresting the suspect is established as a matter of law.

Here, Tennell does not contend that Telthorster used excessive force, but only that he acted negligently, which resulted in his firearm accidentally discharging. Although Tennell alleges that Telthorster acted with malice, malice generally requires specific intent.[13] Tennell included his malice allegation within his petition's single negligence count. Tennell did not allege that Telthorster engaged in intentional misconduct during the arrest and, in fact, concedes that Telthorster accidentally discharged his firearm. Because an intentional tort requires that the actor have a specific intent to inflict injury,[14] and Tennell concedes that the shooting was accidental, I conclude that Tennell's claims against Telthorster are limited to negligence claims. Tennell does not contend otherwise.

I would hold, under these circumstances, that Telthorster's good faith is established as a matter of law. Therefore, the Court's discussion about whether a reasonably prudent officer, under the same or similar circumstances, could have believed that the disputed conduct was justified based on the information the officer possessed when the conduct occurred is unnecessary. While that may be the test that applies when the suspect contends that the officer used excessive force or committed another intentional tort, we are not presented with such claims here.

---

**9.** *Chambers,* 883 S.W.2d at 656.

**10.** —— S.W.3d ——.

**11.** RESTATEMENT (SECOND) OF TORTS § 118 (1965).

**12.** *Id.* § 132.

**13.** *See, e.g.,* TEX. CIV. PRAC. & REM.CODE § 41.001(7).

**14.** *See, e.g., Reed Tool Co. v. Copelin,* 689 S.W.2d 404, 406 (Tex.1985).

For these reasons, I concur in the Court's judgment.

Justice OWEN, concurring.

The Court correctly decides the only issue that is before it, and I join the Court's opinion. The Petitioner in this case, Mark Telthorster, asked the Court to decide only whether the need-versus-risk factors applied in *Wadewitz v. Montgomery,* 951 S.W.2d 464 (Tex.1997), an emergency response case, should be applied when a police officer arrests a suspect. Telthorster argues in this Court that "official immunity protects a police officer if the act was (i) made in exercise of a discretionary duty; (ii) performed in good faith; (iii) in the scope of his or her official authority." Telthorster has not urged this Court to recognize a privilege similar to that described in section 132 of the Restatement (Second) of Torts for law enforcement officials when they use force for the purpose of effecting an arrest or recapture. The briefing in this case does not advocate any type of privilege or similar rule of law in negligence cases.

Thus, while I think that the privilege JUSTICE ENOCH's concurring opinion would apply may have merit, I would not decide whether to recognize such a privilege until we have full briefing and argument on that point.