# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00377-CV

**Kevin M. Pritts, Appellant**

**v.**

**City of Round Rock, Round Rock Police Department, and Jerry Floyd, Appellees**

## FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 02-138-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Kevin M. Pritts sued appellees the City of Round Rock, Round Rock Police Department, and Jerry Floyd for false arrest, complaining that he was wrongfully subjected to a pat-down search and briefly placed in handcuffs. Appellees moved for summary judgment, contending that they were immune from liability because Floyd, the Round Rock Police Officer involved, acted in good faith in performing the search and handcuffing Pritts. The trial court granted appellees' motion and ordered that Pritts should take nothing by his lawsuit. Pritts appeals, arguing that there were material issues of fact as to whether Floyd acted in good faith and challenging the propriety of appellees' summary judgment evidence. Holding that the challenged affidavit supplied competent evidence and that appellees were entitled to summary judgment, we affirm the judgment.

**Standard of Review**

A motion for summary judgment is properly granted only if the movant establishes that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Missouri Pac. R.R. v. Lely Dev. Corp.*, 86 S.W.3d 787, 790 (Tex. App.—Austin 2002, pet. dism'd). A defendant seeking summary judgment must negate as a matter of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Missouri Pac.*, 86 S.W.3d at 790. Not until the defendant establishes a right to summary judgment does the burden shift to the plaintiff to raise a fact issue. *Id.* We make every reasonable inference, resolve all doubts, and view the evidence in the light most favorable to the non-movant. *Id.*

The elements of a false imprisonment claim are that (1) the defendant willfully detained the plaintiff, (2) the plaintiff did not consent to the detention, and (3) the defendant lacked legal authority or justification for the detention.[1] *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). However, a police officer is protected by official immunity for discretionary acts within the scope of his authority that are performed in good faith. *Telthorster v. Tennell*, 92 S.W.3d 457, 461 (Tex. 2002); *City of Hempstead v. Kmiec*, 902 S.W.2d 118, 120-21 (Tex. App.—Houston [1st Dist.] 1995, no writ) (police chief shielded by official immunity from false imprisonment claim). The parties do not dispute that Floyd acted within the scope of his authority and performed a

---

[1] Pritts describes his claims as being for false arrest and an illegal search. However, the elements he sets out in his petition make it clear that he is claiming false imprisonment. *See Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002).

discretionary act. The only question, therefore, is whether appellees showed as a matter of law that Floyd acted in good faith in performing the pat-down search and briefly handcuffing Pritts.

In determining whether an officer acted in good faith, courts are to focus on the reasonableness of the officer's perception and what he could have believed under the circumstances, rather than focusing on the facts through the filter of hindsight. *See Telthorster*, 92 S.W.3d at 464-65. An officer need not show that all reasonable officers would have acted in the same way, but only that a reasonably prudent officer *might* have so acted. *Id*. at 465. Once an officer makes such a showing, the non-movant must do more than show that a reasonably prudent officer could have reached a different decision; he must produce evidence that *no* reasonable officer in the same position "could have believed that the facts were such that they justified his conduct." *Id*.; *see Kmiec*, 902 S.W.2d at 121 ("Nothing in the plaintiff's summary judgment evidence addresses how a reasonable officer would have investigated the allegations against the plaintiff differently. The plaintiff did not submit an affidavit or expert testimony addressing what a reasonable police officer would have done differently.").

**Summary Judgment Evidence**

Pritts and Gail Pritts are divorced and have two children, whose principle residence is with Gail. According to Pritts's affidavit, during a visit in February 2000, his daughter told him that her brother had taken $36 belonging to her. Pritts called his son, who refused to return the money. Pritts then called the Round Rock Police to report that his son had stolen the money and asked an officer to go to Gail's house. When Pritts and his daughter arrived at Gail's home, the police were already there. Officer Floyd came out of the house and told Pritts that he had

3

determined that no charges would be filed regarding the "theft"; Pritts responded that he "figured that would be the outcome." Floyd told Pritts to leave, but Pritts said he was standing on a public sidewalk and was waiting for his daughter to come out of the house. Floyd made a remark "about disturbing the peace" that Pritts took as a threat, and Pritts told Floyd not to threaten him. Floyd then asked to see Pritts's driver's license, which Pritts refused to produce, saying he was not driving. Floyd said something about Pritts refusing to identify himself, and Pritts clarified that he had not refused to identify himself, but had simply refused to produce his driver's license. On Floyd's request, Pritts provided his name and birth date, and Floyd made a radio call from his car. Later, Pritts asked Floyd to move away from him because he felt Floyd was standing too close. Floyd said that he could stand anywhere he pleased, and Pritts responded that he was not telling Floyd where to stand, but was "simply asking him to move." After Pritts put his keys into his pants pocket, Floyd told him that because Pritts had put his hand in his pocket, Floyd had the right to search him. Floyd performed a pat-down search and then put Pritts in handcuffs and told him to be quiet. When Pritts's daughter came out within minutes, Floyd removed the handcuffs and allowed Pritts to leave. Pritts stated in his deposition that he was handcuffed for at most two or three minutes.

Floyd stated by affidavit that he was dispatched on a report of possible theft to Gail Pritts's home. When he arrived, Gail told him that "she had had problems with Kevin Pritts during and after the divorce involving assaultive behavior and had some present concerns regarding his behavior."[2] Gail explained that her son, who was helping her manage the household, had her

---

[2] In his deposition, Pritts admitted that there had been several assault charges filed against him by his ex-wife and his son. One charge resulted in a hung jury, and Pritts pleaded guilty to two other charges.

4

permission to take the money as payment for a household item her daughter had broken. Floyd went to the front yard and explained to Pritts that it was not a case of theft; Pritts became agitated, raised his voice, and used profanity. Floyd advised Pritts to control himself and that he could be arrested for causing a public disturbance if he continued. Pritts became angrier and more agitated and refused to show Floyd his driver's license. Floyd grew concerned because of Gail's report of earlier domestic disturbances; he advised Pritts to calm down and leave. This made Pritts more angry, and he retorted that he was not violating the law and could do as he wished. Floyd stated that throughout their interaction, Pritts kept putting his hands in his pockets. This worried Floyd because of Pritts's past history of violence and because Pritts's anger was being directed at Floyd. At least twice, Floyd told Pritts that it made him nervous when Pritts put his hands in his pockets and asked him to remove his hands. Floyd was so concerned that he called for a second police unit for assistance. After Pritts again put his hands in his pockets, Floyd decided to search him; during the pat-down, Floyd felt a "possible knife" in one of Pritts's pockets. Floyd handcuffed Pritts and then reached into the pocket and retrieved two small pocket knives. Once he determined there were no outstanding warrants, Floyd removed the handcuffs and told Pritts he was free to leave.

### Discussion

As observed above, the only question in determining whether appellees were entitled to judgment on their affirmative defense of immunity is whether Floyd acted in good faith in performing the pat-down search and briefly handcuffing Pritts.

Pritts contends that there are questions of fact about the incident as related in his affidavit versus Floyd's version of events. He alleges there were questions of fact as to: (1) whether

5

Floyd was concerned for his safety and whether Pritts repeatedly put his hands in his pockets; (2) whether Floyd asked him not to put his hands in his pockets; (3) whether Pritts was handcuffed before or after the search; and (4) whether Floyd handcuffed Pritts after the search and made him stand in the yard until Pritts's daughter came out of the house. Pritts contends that these issues raise a fact issue as to whether Floyd acted in good faith.

We note that Pritts did not dispute many of the key facts related in Floyd's affidavit. Pritts did not deny that he had a history of violence with his ex-wife and son, that he was angry and agitated as he spoke to Floyd, that he used profanity and raised his voice, that Floyd asked him to calm down, or that Floyd called for a back-up unit. Pritts related that he put his hand in his pocket and then was searched, but did not dispute that Floyd asked Pritts to remove his hands from his pockets because that made him nervous, or that Floyd decided to conduct the pat-down search after Pritts again put his hands in his pockets. Pritts stated that after the search, Floyd handcuffed him and made him stand quietly in the yard, but he did not rebut that during the search, Floyd felt something like a knife and handcuffed Pritts before reaching into the pocket to remove two pocket knives. Pritts, who in his deposition admitted he was handcuffed for at most two or three minutes, stated only that Floyd let him go after his daughter came out of the house. Pritts never disputed that Floyd removed the handcuffs after determining Pritts was carrying pocket knives and was not wanted under any warrants.

Pritts sent the police to his ex-wife's house and involved them in a dispute between his children over $36. After learning that no criminal charges would be filed against his son, Pritts grew angry and refused to leave, insisting on waiting for his daughter outside his ex-wife's house.

6

Floyd stated that Pritts appeared agitated and behaved strangely. Floyd was concerned that Pritts, a man he learned had a history of domestic violence, kept putting his hands in his pockets, even after being asked not to do so. Floyd grew so concerned that he radioed for a back-up unit and then decided to conduct a pat-down search. During that search Floyd in fact found two knives in Pritts's pocket. Floyd established that, given his perceptions and what he "could have believed" under the circumstances, a reasonably prudent officer might have patted Pritts down and briefly handcuffed him. *See Telthorster*, 92 S.W.3d at 465. Pritts failed to show that no reasonable officer would have acted in the same way. *See id.* Floyd therefore established that he acted in good faith during his encounter with Pritts and is shielded from liability by official immunity.[3] *See id.* at 460-61. The City and the Police Department are likewise protected by immunity. *See City of Houston v. Kilburn*, 849 S.W.2d 810, 812 (Tex. 1993); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West

---

[3] In appellees' motion for summary judgment, they noted that it was not clear whether Pritts was also suing under 42 U.S.C.A. § 1983 (West 2003). In his amended petition, Pritts stated that Floyd's detention was not justified under article 14.03 of the code of criminal procedure, *see* Tex. Code Crim. Proc. Ann. art. 14.03 (West Supp. 2004) (setting out when peace officer may make warrantless arrest), and that Pritts's "civil rights were violated under Article 1, section 9, Searches and Seizures, of the Texas Constitution." From Pritts's pleadings, it appears his claims were brought under Texas law alone, and not under federal law. However, even if Pritts did intend to raise a federal claim, under federal law police officers are protected by qualified immunity if they perform discretionary functions and their "actions could reasonably have been thought consistent with the rights they are alleged to have violated," a question that "generally turns on the 'objective legal reasonableness' of the action." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982)). An officer is shielded by immunity if a reasonable officer could have believed the act was lawful, in light of clearly established law and the information the officer possessed. *Id.* at 641; *see Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000); *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994). The question therefore is whether a reasonable officer could have believed that it was lawful for Floyd to pat down and briefly handcuff Pritts, in light of the law and the information Floyd had. *See Anderson*, 483 U.S. at 641. As discussed above, Floyd established his right to qualified immunity.

1997) (tort claims act does not apply to claim arising out of false imprisonment or other intentional tort). We overrule Pritts's first issue.

## Propriety of Summary Judgment Evidence

Pritts next attacks Floyd's affidavit as improper summary judgment evidence. He first attacks as hearsay Floyd's statements that he knew Pritts had a history of domestic disturbances with his wife. However, Floyd did not relate Gail's allegations to prove the truth of those allegations, but instead to show what Floyd's beliefs and state of mind were when confronted by an angry and agitated Pritts. "Out-of-court statements are not hearsay if offered for a purpose other than to prove the truth of the matter asserted." *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992). Floyd's relating of Gail Pritts's allegations was not hearsay.

Pritts also attacks Floyd's observations that Pritts appeared to be angry and behaved "in a strange and provocative manner," contending that they are unsubstantiated opinions. A statement of subjective belief, unsupported by other evidence, is insufficient to support summary judgment. *Rizkallah v. Conner*, 952 S.W.2d 580, 586 (Tex. App.—Houston [1st Dist.] 1997, no pet.). However, Floyd's statements go to his perception of the situation in which he found himself. Floyd described Pritts's behavior, stating that he appeared to grow angrier and more agitated, used obscenities, was uncooperative, and raised his voice. It is not necessary that Floyd's affidavit contain an explicit, minute-by-minute detail of exactly what Pritts did or said that made Floyd believe that Pritts was angry and agitated. Floyd's affidavit contains sufficient factual descriptions to support his statements that he believed Pritts was angry and behaving strangely.

8

Finally, Pritts complains of Floyd's statements that he was concerned for his safety because Pritts kept putting his hands in his pockets, that he told Pritts that it was making him nervous and asked Pritts to keep his hands out of his pockets, and that he decided to pat down Pritts out of concern for his safety. Pritts complains that because Floyd did not explain why Pritts's actions made him nervous, the statements are conclusory. We disagree and hold that Floyd's affidavit does not contain objectionable legal conclusions. *See id.* at 587. Although Floyd did not say he was worried about a particular weapon, it is clear from the facts recited that he was concerned that under the circumstances Pritts might be dangerous. Floyd's assessment is supported by other factual statements and his statements are neither improper nor conclusory. *See id.* at 586-87. We overrule Pritts's complaints as to the propriety of Floyd's affidavit.

**Conclusion**

Having held that the summary judgment evidence was not defective and that appellees showed that they were entitled to judgment as a matter of law, we affirm the trial court's summary judgment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: March 25, 2004

9