TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00377-CV






Kevin M. Pritts, Appellant


v.


City of Round Rock, Round Rock Police Department, and Jerry Floyd, Appellees







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT

NO. 02-138-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 Appellant Kevin M. Pritts sued appellees the City of Round Rock, Round Rock Police
Department, and Jerry Floyd for false arrest, complaining that he was wrongfully subjected to a pat-down search and briefly placed in handcuffs. Appellees moved for summary judgment, contending
that they were immune from liability because Floyd, the Round Rock Police Officer involved, acted
in good faith in performing the search and handcuffing Pritts. The trial court granted appellees'
motion and ordered that Pritts should take nothing by his lawsuit. Pritts appeals, arguing that there
were material issues of fact as to whether Floyd acted in good faith and challenging the propriety of
appellees' summary judgment evidence. Holding that the challenged affidavit supplied competent
evidence and that appellees were entitled to summary judgment, we affirm the judgment.


Standard of Review


 A motion for summary judgment is properly granted only if the movant establishes
that there are no genuine issues of material fact and that she is entitled to judgment as a matter of
law. Tex. R. Civ. P. 166a(c); Missouri Pac. R.R. v. Lely Dev. Corp., 86 S.W.3d 787, 790 (Tex.
App.--Austin 2002, pet. dism'd). A defendant seeking summary judgment must negate as a matter
of law at least one element of each of the plaintiff's theories of recovery or plead and prove as a
matter of law each element of an affirmative defense. Missouri Pac., 86 S.W.3d at 790. Not until
the defendant establishes a right to summary judgment does the burden shift to the plaintiff to raise
a fact issue. Id. We make every reasonable inference, resolve all doubts, and view the evidence in
the light most favorable to the non-movant. Id.

 The elements of a false imprisonment claim are that (1) the defendant willfully
detained the plaintiff, (2) the plaintiff did not consent to the detention, and (3) the defendant lacked
legal authority or justification for the detention. (1) Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502,
506 (Tex. 2002). However, a police officer is protected by official immunity for discretionary acts
within the scope of his authority that are performed in good faith. Telthorster v. Tennell, 92 S.W.3d
457, 461 (Tex. 2002); City of Hempstead v. Kmiec, 902 S.W.2d 118, 120-21 (Tex. App.--Houston
[1st Dist.] 1995, no writ) (police chief shielded by official immunity from false imprisonment claim). 
The parties do not dispute that Floyd acted within the scope of his authority and performed a
discretionary act. The only question, therefore, is whether appellees showed as a matter of law that
Floyd acted in good faith in performing the pat-down search and briefly handcuffing Pritts.

 In determining whether an officer acted in good faith, courts are to focus on the
reasonableness of the officer's perception and what he could have believed under the circumstances,
rather than focusing on the facts through the filter of hindsight. See Telthorster, 92 S.W.3d at 464-65. An officer need not show that all reasonable officers would have acted in the same way, but only
that a reasonably prudent officer might have so acted. Id. at 465. Once an officer makes such a
showing, the non-movant must do more than show that a reasonably prudent officer could have
reached a different decision; he must produce evidence that no reasonable officer in the same
position "could have believed that the facts were such that they justified his conduct." Id.; see
Kmiec, 902 S.W.2d at 121 ("Nothing in the plaintiff's summary judgment evidence addresses how
a reasonable officer would have investigated the allegations against the plaintiff differently. The
plaintiff did not submit an affidavit or expert testimony addressing what a reasonable police officer
would have done differently.").


Summary Judgment Evidence


 Pritts and Gail Pritts are divorced and have two children, whose principle residence
is with Gail. According to Pritts's affidavit, during a visit in February 2000, his daughter told him
that her brother had taken $36 belonging to her. Pritts called his son, who refused to return the
money. Pritts then called the Round Rock Police to report that his son had stolen the money and
asked an officer to go to Gail's house. When Pritts and his daughter arrived at Gail's home, the
police were already there. Officer Floyd came out of the house and told Pritts that he had 
determined that no charges would be filed regarding the "theft"; Pritts responded that he "figured
that would be the outcome." Floyd told Pritts to leave, but Pritts said he was standing on a public
sidewalk and was waiting for his daughter to come out of the house. Floyd made a remark "about
disturbing the peace" that Pritts took as a threat, and Pritts told Floyd not to threaten him. Floyd then
asked to see Pritts's driver's license, which Pritts refused to produce, saying he was not driving. 
Floyd said something about Pritts refusing to identify himself, and Pritts clarified that he had not
refused to identify himself, but had simply refused to produce his driver's license. On Floyd's
request, Pritts provided his name and birth date, and Floyd made a radio call from his car. Later,
Pritts asked Floyd to move away from him because he felt Floyd was standing too close. Floyd said
that he could stand anywhere he pleased, and Pritts responded that he was not telling Floyd where
to stand, but was "simply asking him to move." After Pritts put his keys into his pants pocket, Floyd
told him that because Pritts had put his hand in his pocket, Floyd had the right to search him. Floyd
performed a pat-down search and then put Pritts in handcuffs and told him to be quiet. When Pritts's
daughter came out within minutes, Floyd removed the handcuffs and allowed Pritts to leave. Pritts
stated in his deposition that he was handcuffed for at most two or three minutes.

 Floyd stated by affidavit that he was dispatched on a report of possible theft to Gail
Pritts's home. When he arrived, Gail told him that "she had had problems with Kevin Pritts during
and after the divorce involving assaultive behavior and had some present concerns regarding his
behavior." (2) Gail explained that her son, who was helping her manage the household, had her
permission to take the money as payment for a household item her daughter had broken. Floyd went
to the front yard and explained to Pritts that it was not a case of theft; Pritts became agitated, raised
his voice, and used profanity. Floyd advised Pritts to control himself and that he could be arrested
for causing a public disturbance if he continued. Pritts became angrier and more agitated and refused
to show Floyd his driver's license. Floyd grew concerned because of Gail's report of earlier
domestic disturbances; he advised Pritts to calm down and leave. This made Pritts more angry, and
he retorted that he was not violating the law and could do as he wished. Floyd stated that throughout
their interaction, Pritts kept putting his hands in his pockets. This worried Floyd because of Pritts's
past history of violence and because Pritts's anger was being directed at Floyd. At least twice, Floyd
told Pritts that it made him nervous when Pritts put his hands in his pockets and asked him to remove
his hands. Floyd was so concerned that he called for a second police unit for assistance. After Pritts
again put his hands in his pockets, Floyd decided to search him; during the pat-down, Floyd felt a
"possible knife" in one of Pritts's pockets. Floyd handcuffed Pritts and then reached into the pocket
and retrieved two small pocket knives. Once he determined there were no outstanding warrants,
Floyd removed the handcuffs and told Pritts he was free to leave.


Discussion


 As observed above, the only question in determining whether appellees were entitled
to judgment on their affirmative defense of immunity is whether Floyd acted in good faith in
performing the pat-down search and briefly handcuffing Pritts.

 Pritts contends that there are questions of fact about the incident as related in his
affidavit versus Floyd's version of events. He alleges there were questions of fact as to: (1) whether
Floyd was concerned for his safety and whether Pritts repeatedly put his hands in his pockets; (2)
whether Floyd asked him not to put his hands in his pockets; (3) whether Pritts was handcuffed
before or after the search; and (4) whether Floyd handcuffed Pritts after the search and made him
stand in the yard until Pritts's daughter came out of the house. Pritts contends that these issues raise
a fact issue as to whether Floyd acted in good faith.

 We note that Pritts did not dispute many of the key facts related in Floyd's affidavit. 
Pritts did not deny that he had a history of violence with his ex-wife and son, that he was angry and
agitated as he spoke to Floyd, that he used profanity and raised his voice, that Floyd asked him to
calm down, or that Floyd called for a back-up unit. Pritts related that he put his hand in his pocket
and then was searched, but did not dispute that Floyd asked Pritts to remove his hands from his
pockets because that made him nervous, or that Floyd decided to conduct the pat-down search after
Pritts again put his hands in his pockets. Pritts stated that after the search, Floyd handcuffed him and
made him stand quietly in the yard, but he did not rebut that during the search, Floyd felt something
like a knife and handcuffed Pritts before reaching into the pocket to remove two pocket knives. 
Pritts, who in his deposition admitted he was handcuffed for at most two or three minutes, stated
only that Floyd let him go after his daughter came out of the house. Pritts never disputed that Floyd
removed the handcuffs after determining Pritts was carrying pocket knives and was not wanted under
any warrants. 

 Pritts sent the police to his ex-wife's house and involved them in a dispute between
his children over $36. After learning that no criminal charges would be filed against his son, Pritts
grew angry and refused to leave, insisting on waiting for his daughter outside his ex-wife's house. 
Floyd stated that Pritts appeared agitated and behaved strangely. Floyd was concerned that Pritts,
a man he learned had a history of domestic violence, kept putting his hands in his pockets, even after
being asked not to do so. Floyd grew so concerned that he radioed for a back-up unit and then
decided to conduct a pat-down search. During that search Floyd in fact found two knives in Pritts's
pocket. Floyd established that, given his perceptions and what he "could have believed" under the
circumstances, a reasonably prudent officer might have patted Pritts down and briefly handcuffed
him. See Telthorster, 92 S.W.3d at 465. Pritts failed to show that no reasonable officer would have
acted in the same way. See id. Floyd therefore established that he acted in good faith during his
encounter with Pritts and is shielded from liability by official immunity. (3) See id. at 460-61. The
City and the Police Department are likewise protected by immunity. See City of Houston v. Kilburn,
849 S.W.2d 810, 812 (Tex. 1993); see also Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2) (West
1997) (tort claims act does not apply to claim arising out of false imprisonment or other intentional
tort). We overrule Pritts's first issue.


Propriety of Summary Judgment Evidence


 Pritts next attacks Floyd's affidavit as improper summary judgment evidence. He
first attacks as hearsay Floyd's statements that he knew Pritts had a history of domestic disturbances
with his wife. However, Floyd did not relate Gail's allegations to prove the truth of those
allegations, but instead to show what Floyd's beliefs and state of mind were when confronted by an
angry and agitated Pritts. "Out-of-court statements are not hearsay if offered for a purpose other than
to prove the truth of the matter asserted." McCraw v. Maris, 828 S.W.2d 756, 757 (Tex. 1992). 
Floyd's relating of Gail Pritts's allegations was not hearsay.

 Pritts also attacks Floyd's observations that Pritts appeared to be angry and behaved
"in a strange and provocative manner," contending that they are unsubstantiated opinions. A
statement of subjective belief, unsupported by other evidence, is insufficient to support summary
judgment. Rizkallah v. Conner, 952 S.W.2d 580, 586 (Tex. App.--Houston [1st Dist.] 1997, no
pet.). However, Floyd's statements go to his perception of the situation in which he found himself. 
Floyd described Pritts's behavior, stating that he appeared to grow angrier and more agitated, used
obscenities, was uncooperative, and raised his voice. It is not necessary that Floyd's affidavit contain
an explicit, minute-by-minute detail of exactly what Pritts did or said that made Floyd believe that
Pritts was angry and agitated. Floyd's affidavit contains sufficient factual descriptions to support
his statements that he believed Pritts was angry and behaving strangely.

 Finally, Pritts complains of Floyd's statements that he was concerned for his safety
because Pritts kept putting his hands in his pockets, that he told Pritts that it was making him nervous
and asked Pritts to keep his hands out of his pockets, and that he decided to pat down Pritts out of
concern for his safety. Pritts complains that because Floyd did not explain why Pritts's actions made
him nervous, the statements are conclusory. We disagree and hold that Floyd's affidavit does not
contain objectionable legal conclusions. See id. at 587. Although Floyd did not say he was worried
about a particular weapon, it is clear from the facts recited that he was concerned that under the
circumstances Pritts might be dangerous. Floyd's assessment is supported by other factual
statements and his statements are neither improper nor conclusory. See id. at 586-87. We overrule
Pritts's complaints as to the propriety of Floyd's affidavit.


Conclusion


 Having held that the summary judgment evidence was not defective and that appellees
showed that they were entitled to judgment as a matter of law, we affirm the trial court's summary
judgment.



 __________________________________________

 Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: March 25, 2004
1. Pritts describes his claims as being for false arrest and an illegal search. However, the
elements he sets out in his petition make it clear that he is claiming false imprisonment. See Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002).
2. In his deposition, Pritts admitted that there had been several assault charges filed against
him by his ex-wife and his son. One charge resulted in a hung jury, and Pritts pleaded guilty to two
other charges. 
3. In appellees' motion for summary judgment, they noted that it was not clear whether Pritts
was also suing under 42 U.S.C.A. § 1983 (West 2003). In his amended petition, Pritts stated that
Floyd's detention was not justified under article 14.03 of the code of criminal procedure, see Tex.
Code Crim. Proc. Ann. art. 14.03 (West Supp. 2004) (setting out when peace officer may make
warrantless arrest), and that Pritts's "civil rights were violated under Article 1, section 9, Searches
and Seizures, of the Texas Constitution." From Pritts's pleadings, it appears his claims were brought
under Texas law alone, and not under federal law. However, even if Pritts did intend to raise a
federal claim, under federal law police officers are protected by qualified immunity if they perform
discretionary functions and their "actions could reasonably have been thought consistent with the
rights they are alleged to have violated," a question that "generally turns on the 'objective legal
reasonableness' of the action." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (quoting Harlow
v. Fitzgerald, 457 U.S. 800, 814 (1982)). An officer is shielded by immunity if a reasonable officer
could have believed the act was lawful, in light of clearly established law and the information the
officer possessed. Id. at 641; see Hunter v. Bryant, 502 U.S. 224, 227 (1991); Malley v. Briggs, 475
U.S. 335, 341 (1986); Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000); Babb v. Dorman, 33
F.3d 472, 477 (5th Cir. 1994). The question therefore is whether a reasonable officer could have
believed that it was lawful for Floyd to pat down and briefly handcuff Pritts, in light of the law and
the information Floyd had. See Anderson, 483 U.S. at 641. As discussed above, Floyd established
his right to qualified immunity.