**Ollie Lee TENNELL, Appellant,**

v.

**Mark Andrew TELTHORSTER,
Appellee.**

**No. 14–99–01141–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 12, 2000.

Opinion reversed on appeal, ——
S.W.3d ——.

Phillip Robert Brinson, Houston, W. Wendell Hall, Renee Forinash McElhaney, San Antonio, for appellant.

Albert M. Hassler, II, Richard P. Hogan Jr., David M. Gunn, David P. Matthews, Houston, for appellee.

Panel consists of Chief Justice MURPHY and Justices HUDSON and WITTIG.

## OPINION

PAUL C. MURPHY, Chief Justice.

Officer Telthorster shot an unarmed man in the back while he was lying on the ground, half-handcuffed. In this appeal from a summary judgment on the affirmative defense of qualified immunity, we are asked to review whether appellee, Officer Mark Andrew Telthorster, established as a matter of law that he acted in good faith during the arrest of appellant, Ollie Lee Tennell. We hold that he did not and reverse the trial court's summary judgment.

### FACTUAL AND PROCEDURAL HISTORY

The appellee, who was employed by the Navasota Police Department, observed the appellant in his vehicle committing traffic

violations. The appellee, and his partner Officer Bailey, decided to stop the appellant and after following for some distance, turned on their flashing lights. The appellant did not stop, and the appellee followed the appellant to the driveway of the appellant's home. After the appellant exited his vehicle, the appellee and Officer Bailey began to arrest and handcuff the appellant. During the handcuffing process, the appellee's gun went off, and he shot the appellant and Officer Bailey.

The appellant sued both the appellee and the City of Navasota for negligence. The City and the appellee moved for summary judgment alleging the affirmative defense of qualified immunity on behalf of the officer and sovereign immunity on behalf of the City.

The trial court granted the appellee's motion for summary judgment. The parties reached an agreement in which the appellant non-suited the City of Navasota pending this appeal. In one point of error, the appellant argues the appellee is not entitled to summary judgment based on qualified immunity because he failed to establish as a matter of law that he acted in good faith during the appellant's arrest.

## STANDARD OF REVIEW

The standard we follow in reviewing a summary judgment is well-established. The movant for summary judgment has the burden to show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); Tex. R.Civ.P. 166a(c). When deciding whether there is a disputed material fact issue precluding summary judgment, we treat proof favorable to the non-movant as true and we resolve any doubts in his favor. *Nixon*, 690 S.W.2d at 548–49; *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984).

## ANALYSIS

### A. Official Immunity

A properly pleaded affirmative defense, supported by uncontroverted summary judgment proof, may serve as the basis for a summary judgment. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991). To be entitled to summary judgment on the affirmative defense of official and sovereign immunity, appellants have the burden to establish all the essential elements of those defenses as a matter of law. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979).

The purpose of official immunity is to insulate the functioning of government from the harassment of litigation, not to protect erring officials. The public would suffer if government officers, who must exercise judgment and discretion in their jobs, were subject to civil lawsuits that second-guessed their decisions. *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994). Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *Chambers*, 883 S.W.2d at 653. The appellant argues only that the appellee was not acting in good faith during his arrest.

### B. Good Faith

The Supreme Court of Texas determined that a court must measure good faith in official immunity cases against a standard of objective legal reasonableness, without regard to the officer's subjective state of mind. *Chambers*, 883 S.W.2d at 656. To establish good faith, one must show that a reasonably prudent officer, under the same or similar circumstances,

could have believed his conduct was lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. *Chambers,* 883 S.W.2d at 656 (holding, in police pursuit cases, an officer acts in good faith, if a reasonably prudent officer, under the same or similar circumstance, could have believed that the need to immediately apprehend a suspect outweighed a clear risk of harm to the public in continuing the pursuit).

■ Simple subjective pronouncements of good faith by a defendant-officer, or by experts supporting the officer's assertions, are insufficient as a matter of law to meet the summary judgment movant's burden of showing good faith. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex.1997). The test for good faith, in emergency response cases, depends on how a reasonably prudent officer could have assessed both the need to which an officer responds and the risks of the officer's course of action, based on the officer's perception of the facts at the time of the event. *Id.* Therefore, it is incumbent on an officer asserting official immunity to not only explain the urgency of the circumstances requiring police intervention but also address the degree, likelihood, and obviousness of the risks created by the officer's actions. *Id.*

■ The "need" aspect of the test for good faith refers to the urgency of the circumstances requiring police intervention. Need is determined by factors such as the seriousness of the crime to which the officer responds, whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect, and what alternative courses of action, if any, are available to achieve a comparable result. The "risk" aspect of good faith refers to the countervailing public safety concerns: the nature and severity of harm that the officer's actions could cause, the likelihood that any harm would occur, and whether any risk of harm would be clear to a reasonably prudent officer. *Id. See also, University of Houston v. Clark,* 22 S.W.3d 915 (2000).

■ If the officer presents sufficient proof to meet his initial summary judgment burden on the issue of good faith, the non-movant must then controvert his proof with a showing elevated from that usually required of non-movants in summary judgment proceedings. The plaintiff must do more than show that a reasonably prudent officer could have acted differently; the plaintiff must show that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. *Chambers,* 883 S.W.2d at 657.

C. Discussion of Facts and the Law of Good Faith

As part of his summary judgment proof, appellee attached an excerpt from his deposition in which he stated that the appellant committed traffic violations in Navasota, failed to stop, and led the appellee and his partner, Officer Bailey, on a high-speed chase at over 100 miles per hour for thirty miles. The appellant pulled into the driveway of his house in Bryan, and beeped his horn to attract the attention of others. The appellee stated other persons did come out of their homes after the appellant was handcuffed. The appellee stated the appellant did not exit his vehicle when he was first told to do so. Officer Bailey was then able to put the appellant down on the ground, face down. The appellee stated that he handcuffed the appellant's left hand, and saw Officer Bailey struggling with the appellant's right hand. As the appellee assisted in handcuffing the appellant's right hand, the appellee's finger slipped into the trigger guard of his unhol-

stered weapon, which had a bullet in the chamber. The appellee shot the appellant in the back and Officer Bailey in the left hand. Officer Bailey never asked the appellee for assistance in handcuffing the appellant. The appellee also stated that he did not think the appellant would cause serious bodily injury to anyone, and he never saw a weapon on the appellant.

In his summary judgment proof, the appellee included the affidavit of Michael Patton, a law enforcement officer and Director of the Gus George Law Enforcement Academy in Fort Bend County, who stated he read the original complaint, the motion for summary judgment, the depositions of the appellee and the appellant, and other documents in the case. He stated the appellee could not have known why the appellant attempted to evade arrest, and could not have known whether the appellant would cause the officers injury. He stated the likelihood of the need to use force to subdue the suspect was reasonable. He also stated:

Under the circumstances presented by Mr. Tennell's actions, a reasonable officer would consider it appropriate for the police officers present to draw and have ready their firearms for the safety of the officers, the general public and Mr. Tennell. Indeed, at least one officer should, under such circumstances, keep a firearm unholstered and ready up until Mr. Tennell was secured by handcuffs or any other form of restraint and was searched for a weapon incidental to his arrest.

An excerpt of the deposition of Officer Bailey was included in the appellant's summary judgment proof attached to his response. Officer Bailey approached the appellant's vehicle from five to seven feet behind, with his gun unholstered. He stated that the appellant did comply with exiting his vehicle when Officer Bailey asked him to do so, and the appellant kept his hands in the air. Officer Bailey put his gun back into the holster. The appellant started to get down on the ground on his own, and to lie face down. As Officer Bailey reached for the appellant's right hand to handcuff it, the appellee's gun went off.

Excerpts of the deposition of Michael Lys, lieutenant in the Navasota Police Department, were part of the proof attached to the appellant's response to the motion for summary judgment. Lieutenant Lys referred to a policy and procedure manual of the Navasota Police Department, introduced as part of the summary judgment proof. Lieutenant Lys stated that it is only reasonable for an officer to draw his weapon when he reasonably anticipates the need for such a weapon. An officer can draw his firearm when he has reason to fear for his own safety or for others' safety. Deadly force should be used only when the officer reasonably perceives an immediate risk of death or serious bodily injury. Excerpts of the deposition of Officer Craig Wiesepape of the Navasota Police Department, and supervisor of the appellee, were also part of the proof attached to the appellant's response to the motion for summary judgment. Officer Wiesepape stated that an officer should not draw his weapon unless the officer suspects that serious bodily injury will occur. He also stated it depends on the situation the officer faces.

In the appellee's reply to the appellant's response to the motion for summary judgment, he included two affidavits by Officers Lys and Wiesepape in which they stated that nothing in their depositions should be construed to question the reasonableness of the appellee officer's actions on the night of appellant's arrest:

[I]t would be perfectly reasonable for an officer who is "covering" another officer

who was handcuffing a suspect who had just been apprehended after a lengthy chase to have his gun drawn in order to assure the safety of all present. . . [I]t is clearly appropriate for the secondary officer to an arrest to have his weapon available to him and drawn until such time as the suspect is fully secured and properly handcuffed.

## CONCLUSION

In the appellee's summary judgment proof, the appellee and the other experts did not establish the need and the risk aspects of the test for good faith in immunity cases to entitle the appellee to judgment as a matter of law. *See Wadewitz*, 951 S.W.2d at 467. The appellee and the other experts simply addressed the necessity for a secondary officer to keep his gun unholstered during an arrest.

We first reviewed the statements of the appellee and the experts to look for an evaluation of the need aspects of the test of good faith. The appellee did show that the appellant led the officers on a high speed chase for many miles. It was important to apprehend the appellant. The experts, who made statements in their depositions and affidavits, did not discuss the need for the appellee to complete the appellant's handcuffing, while having his gun unholstered, cocked, and aimed at the unarmed appellant lying on the ground. The experts also did not discuss that the appellee's presence might not have been necessary, except as an officer covering for another officer during an arrest. In Officer Patton's affidavit, he did not address Officer Bailey's conclusion that the appellant was unarmed, was not attempting to flee, and presented no risk of harm to anyone. The experts did not discuss alternative courses of action that were available to the appellee. There was no discussion whether the appellee could have allowed Officer

Bailey to complete the handcuffing process unassisted.

We also reviewed the statements of the appellee and the experts to look for an evaluation of the risk aspects of the test for good faith. There is no discussion of the nature and severity of harm the appellee's actions could have caused, and the likelihood that harm would have occurred. The appellee stated, in his deposition, that he felt no danger of serious bodily harm while the appellant was being handcuffed. However, he kept his weapon unholstered and ready. He stated that he had already handcuffed the appellant's left hand, and in doing so, he created a situation where there was a likelihood of harm to the appellant, to Officer Bailey, and to potential bystanders. The appellee made a decision to assist in the completion of the handcuffing. The experts, in their depositions and affidavits, never discuss that a reasonably prudent officer should consider that his unholstered and ready weapon, if it goes off, could cause harm to others.

We do not reach the question of whether the appellant has controverted the appellee's summary judgment proof, because the appellee does not prove, as a matter of law, that he acted in good faith during the arrest of the appellant. We reverse the granting of the motion for summary judgment, and remand the cause to the trial court for further proceedings.

J. HARVEY HUDSON, Justice, dissenting.

I cannot agree with the majority's conclusion that the appellee did not prove, as a matter of law, that he acted in good faith during the appellant's arrest.

Government employees are entitled to official immunity from suit arising from their actions if the injury arose while the employees were (1) exercising discretionary duties; (2) in good faith; (3) that were

within the scope of their authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994). Here, the parties agree that at the time of the injury, the appellee was exercising a discretionary duty within the scope of his authority. The parties disagree only on whether he acted in good faith.

In the context of a police response, "good faith" depends upon how a reasonably prudent officer could have assessed the need to respond and the risks associated with the officer's action. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex. 1997). Here, the appellee supported his motion for summary judgment with deposition testimony and the affidavit of Michael Patton, Director of the Gus George Law Enforcement Academy which is operated by the Fort Bend County Sheriff's Department. In assessing the need of the appellee to respond by drawing his weapon, Patton states:

> Mr. Tennell's own sworn testimony as well as that of all of the officers involved in the events relevant to this suit, establish that, on the night of May 18, 1996, Mr. Tennell attempted to evade police arrest by engaging Navasota and Bryan Police officers, including Officer Telthorster, in a high speed police chase. When the chase ended, the officers could not have immediately known what motivated Mr. Tennell to attempt to evade them or whether Mr. Tennell might immediately attempt to cause them injury in order to continue his demonstrated resistance to arrest or for any other reason. In fact, a reasonable officer would be well advised—and actually instructed—to consider the likelihood the need to use force to subdue the suspect under such circumstances. An officer could reasonably assume that Mr. Tennell was attempting to flee the police because of a fear that he might be arrested for a serious crime.

In assessing the risks associated with subduing a fleeing suspect while holding an unholstered firearm, Patton states:

> Under the circumstances presented by Mr. Tennell's own actions, a reasonable officer would consider it appropriate for the police officers present to draw and have ready their firearms for the safety of the officers, the general public and Mr. Tennell. Indeed, at least one officer should, under such circumstances, keep a firearm unholstered and ready up until the time Mr. Tennell was secured by handcuffs or any other form of restraint and was searched for a weapon incidental to his arrest.

The majority suggests the appellee failed to assess the nature, severity, likelihood, and obvious risks associated with trying to subdue a suspect while holding a firearm. However, the Supreme Court has recognized that, "depending on the circumstances, an officer may not be able to thoroughly analyze each need or risk factor, and ... this alone should not prevent the officer from establishing good faith." *See University of Houston v. Clark*, 38 S.W.3d 578, 583 (Tex.2000). Here, Patton summarized his conclusions as follows:

> Specifically, Officer Telthorster's use of his gun under the facts of this incident was a reasonable exercise of his discretion, in accordance with standard officer safety training, and prevailing Texas and constitutional law. These actions were made incidental to the discretion all officers have to ensure his own safety as well as that of others under the circumstances presented by Mr. Tennell's actions. Officer Telthorster's decision to keep his firearm drawn up until Mr. Tennell was handcuffed and searched for weapons was appropriate. A reasonable police officer in Officer Telthor-

ster's position—presented with the facts he knew at the time—could reasonably believe that such action was appropriate and not in violation of any clearly established law.

All of the information which I have reviewed demonstrates that the discharge of his firearm was an inadvertent and unexpected mistake which seems to have been caused during the struggle to handcuff the suspect. Although this accident caused some injury to Mr. Tennell, the occurrence of that accident does not demonstrate any impropriety in Officer Telthorster's conduct.

I believe the appellee has properly addressed both the need and risk factors associated with his conduct. In response, the appellant did not rebut the aforementioned summary judgment proof with affidavits or other summary judgment proof showing that no reasonable police officer would, under the same or similar circumstances, have attempted to subdue the appellant while holding a firearm.

Accordingly, I respectfully dissent.