

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00031-CR

_____


OLIVER HART, III, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 06F0380-005


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Carter

MEMORANDUM OPINION

Oliver Hart, III, pled not guilty to the charge of possession of a controlled substance (methamphetamine), of more than 400 grams. After a jury trial where Michelle Holmes testified against Hart, he was found guilty, and the trial court sentenced him to forty-five years' imprisonment. The trial court also awarded $1,500.00 in attorney's fees against Hart.

In a previous case, Hart absconded during his trial, was tried in absentia, found guilty, and assessed a thirty-year sentence. As a result, the police had an arrest warrant for Hart and information that he was in Holmes' apartment with a gun. When the police arrived, Holmes told them Hart was "in the back room with a gun." The police searched the premises and found Hart hiding in a closet. While searching for Hart and the gun, the police discovered 400 grams of methamphetamine in various places throughout the apartment.

On appeal, Hart argues that: (1) he was denied a speedy trial; (2) there was insufficient evidence corroborating Holmes' testimony; and (3) there was legally and factually insufficient evidence to support the award of attorney's fees.

We modify the judgment because there is no evidence supporting the award of attorney's fees, and we affirm the judgment, as modified, because: (1) Hart was not denied a speedy trial; and (2) there is sufficient evidence that tends to connect Hart to the charged crime.

I.      Speedy Trial

In his first point of error, Hart contends that his constitutional rights were violated because

he did not receive a speedy trial.

An accused's right to a speedy trial is guaranteed by both the Constitutions of the United States and Texas. U.S. CONST. amends. IV, XIV; TEX. CONST. art. I, § 10. In determining whether an accused has been denied his or her right to a speedy trial, a court must use a balancing test "in which the conduct of both the prosecution and the defendant are weighed." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The factors to be weighed in the balance include, but are not necessarily limited to, the length of the delay, the reason for the delay, the defendant's assertion of his or her speedy trial right, and the prejudice to the defendant resulting from the delay. *Id.* No single factor is necessary or sufficient to establish a violation of the right to a speedy trial. *Id.* at 533; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). In conducting this balancing test, "the conduct of both the prosecution and the defendant are [to be] weighed." *Id.* at 530. The defendant's burden of proof on the latter two *Barker* factors varies inversely with the State's degree of culpability for the delay. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008) (citing *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993)). "Thus, the greater the State's bad faith or official negligence and the longer its actions delay a trial, the less [an accused] must show actual prejudice or prove diligence in asserting [the] right to a speedy trial." *Id.* at 280–81.

As stated in *Zamorano v. State*, "In reviewing the trial court's ruling on appellant's federal constitutional speedy trial claim, we apply a bifurcated standard of review: an abuse of discretion standard for factual components, and a de novo standard for the legal components." 84 S.W.3d

3

643, 648 (Tex. Crim. App. 2002). Review of the individual *Barker* factors necessarily involves fact determinations and legal conclusions, but "the balancing test as a whole . . . is a purely legal question." *Cantu*, 253 S.W.3d at 282 (quoting *Zamorano*, 84 S.W.3d at 648 n.19). "Under the abuse of discretion standard, appellate courts defer not only to a trial judge's resolution of disputed facts, but also to his right to draw reasonable inferences from those facts." *Cantu*, 253 S.W.3d at 282.

We examine the four *Barker* factors separately.

### A.    Length of Delay

Hart was arrested on May 6, 2005, but was not tried until January 2010. Four years and eight months elapsed between Hart's arrest and his trial. Such a lengthy delay is presumed to be prejudicial. *Doggett v. United States*, 505 U.S. 647 (1992) (most delays of eight months or more are considered presumptively unreasonable and prejudicial); *Barker*, 407 U.S. at 530. Therefore, this factor weighs against the State.

### B.    Reason for the Delay

When the delay is determined to be presumptively prejudicial, the burden shifts to the State to justify the delay. *Love v. State*, 909 S.W.2d 930, 947 (Tex. App.—El Paso 1995, pet. ref'd) (citing *Green v. State*, 760 S.W.2d 50, 52 (Tex. App.—El Paso 1988, no pet.)); *see also Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). Under *Barker*, "different weights" should be attributed to this factor depending upon the different reasons for the delay. 407 U.S. at

531; *Munoz v. State*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999). A "deliberate attempt to delay the trial" weighs heavily against the State, whereas a "more neutral reason, such as negligence or overcrowded courts, should be weighed" less heavily against the State. *Munoz*, 922 S.W.2d at 822 (quoting *Barker*, 407 U.S. at 531). "A valid reason for the delay should not be weighed against the State." *Id*.

Here, the State made no effort to try Hart for the charged offense until 2009, and the State offered no explanation for this delay. However, the record does offer evidence regarding the reasons for the delay from February 2009 to January 2010. The public defender's office was appointed to represent Hart in February 2009, but five months later, in July, Hart moved to dismiss his public defender and requested new appointed counsel. Hart retained Paul Hoover in August 2009, and Hoover requested, and received, a continuance. Hoover unexpectedly passed away in October 2009, and John Stroud, III, was appointed to take over Hoover's cases, including Hart's. In December, Stroud withdrew from the case, and the court, once again, appointed the public defender's office to represent Hart on January 7, 2010. Eight days later, Hart filed a motion to dismiss for denial of a speedy trial. At most, Hart is responsible for seven of the fifty-six months of the delay in this trial. Due to the extended delay for which the State offered no explanation, this factor weighs heavily against the State.

## C. Assertion of the Right to Speedy Trial

The accused bears the responsibility to assert his or her right to a speedy trial. *Cantu*, 253

S.W.3d at 282. "The more serious the deprivation, the more likely a defendant is to complain." *Id*. at 283 (quoting *Barker*, 407 U.S. at 531). An accused's assertion of his or her speedy trial right (or the failure to assert the right) "is entitled to strong evidentiary weight in determining whether the [accused] is being deprived of the right." *Id*.; *Harris v. State*, 827 S.W.2d 949, 957 (Tex. Crim. App. 1992) ("[A]ppellant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial."); *see Barker*, 407 U.S. at 536 ("[B]arring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates . . . that the defendant did not want a speedy trial."). As the Fifth Circuit stated in *United States v. Palmer*, "the point at which the defendant asserts his right is important because it may reflect the seriousness of the personal prejudice he is suffering." 537 F.2d 1287, 1288 (5th Cir.1976).

Here, shortly after being appointed in January 2010, Hart's public defender filed a motion to dismiss for denial of a speedy trial.[1] However, Hart failed to seek a speedy trial before moving to dismiss the charges against him. "Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 282–83. If a defendant seeks to dismiss his or her charges prior to seeking a speedy trial, "he should provide cogent reasons" for doing so. *Id.* at 283. "Repeated requests

---

[1]In May 2006, Hart sought a speedy trial for trial cause numbers 04F0217-005, 04F0218-005, 04F0555-005, and 04F0556-005, but did not seek a speedy trial for the charges against him in this case, trial cause number 06F0380-005. In July 2009, Hart filed several pro se motions to dismiss, arguing that the State failed to timely indict him on the charges and serve him with a copy of the indictment. However, his motions failed to request a speedy trial or otherwise invoke his right to a speedy trial.

for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id.*

Hart failed to assert his right to a speedy trial for more than four years. In January 2010, Hart filed to dismiss the charges against him without having first sought a speedy trial and without providing cogent reasons for such failure. We conclude these facts weigh against a finding that Hart was denied a speedy trial.

### D.    Prejudice

"Because 'pretrial delay is often both inevitable and wholly justifiable,' the fourth *Barker* factor examines whether and to what extent the delay had prejudiced the defendant." *Cantu*, 253 S.W.3d at 285 (quoting *Doggett*, 505 U.S. at 656). In analyzing the prejudice to the accused, we must do so in light of the accused's "interests that the speedy-trial right was designed to protect: (1) to prevent oppressive pretrial incarceration[;] (2) to minimize the accused's anxiety and concern[;] and (3) to limit the possibility that the accused's defense will be impaired." *Id.* (citing *Dragoo*, 96 S.W.3d at 315). Of these three types of prejudice, "the last is the most serious 'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.'" *Id.* (quoting *Dragoo*, 96 S.W.3d at 315). Although "a showing of 'actual prejudice' is not required in Texas," the accused has the burden to make some showing of prejudice that was caused by the delay of the trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973)

7

(quoting *Courtney v. State*, 472 S.W.2d 151, 154 (Tex. Crim. App. 1971)).

Hart has made no showing that he suffered anxiety or concern that resulted from this case, beyond that associated with any criminal charge or investigation. "[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." *Cantu*, 253 S.W.3d at 286.

Hart also failed to show how his defense was impaired, other than making unsupported, general allegations regarding the "lack of reliability of witnesses' memories from an event that occurred almost five years ago . . . ." and "the difficulty of finding witnesses from almost five years ago." While Hart was incarcerated for much of the fifty-six months prior to his trial in this case, the incarceration was not due solely to this charge. During the pendency of these charges, Hart was incarcerated based on previous criminal convictions. We conclude this factor weighs against Hart.

Here, the State failed to provide any explanation of why it waited almost five years to try Hart on this charge. However, Hart failed to seek a speedy trial or produce evidence that he was prejudiced by the delay. Based upon the factors discussed above and weighing the evidence in this case, we conclude that the trial court reasonably concluded that Hart was not denied his constitutional right to a speedy trial.

## II.    Accomplice Witness Corroboration

8

At trial, Holmes testified against Hart, stating that the gun and drugs found in her apartment were his. Hart argues that there is insufficient evidence to corroborate Holmes' testimony.[2, 3] We disagree.

The test is whether, after excluding the accomplice's testimony, there is other evidence of an incriminating character which tends to connect the defendant with the commission of the offense. *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007). It needs only to link the accused to the commission of the crime and show that "rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). If the State fails to produce any nonaccomplice evidence tending to connect the defendant to the offense, then the defendant is entitled to an acquittal. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005); *Taylor v. State*, 10 S.W.3d 673, 685 (Tex. Crim. App. 2000).

There is no specific amount of nonaccomplice corroboration evidence that is required for sufficiency purposes; "[e]ach case must be judged on its own facts." *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). The Texas Court of Criminal Appeals has stated that "[p]roof that the

---

[2]Citing our decision in *Cochran v. State*, the State contends that by admitting his guilt during the punishment phase of the trial, Hart waived any challenge to the sufficiency of the evidence corroborating Holmes' testimony. 107 S.W.3d 96, 100 (Tex. App.—Texarkana 2003, no pet.). However, the defendant in *Cochran* challenged the sufficiency of the evidence of guilt, rather than the sufficiency of the corroborating evidence; therefore, *Cochran* is inapplicable. *Id.* Furthermore, the sufficiency of corroborating evidence is not subject to procedural default; therefore, Hart's admission of guilt in the punishment phase of the trial is irrelevant. *Patterson v. State*, 204 S.W.3d 852, 856–58 (Tex. App.—Corpus Christi 2006, pet. ref'd).

[3]It is undisputed that Holmes was an accomplice to the charged offense.

accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). However, the "mere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony." *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993).

Here, Hart was being sought on a felony arrest warrant based on his prior conviction for manufacturing methamphetamine. After receiving information that Hart was at Holmes's apartment, Lance Hall executed the arrest warrant there and searched the apartment. Hart did not rent the apartment or reside there; however, there was evidence that Hart commonly stayed there, "in and out," for some time. During the search of the apartment, Hart was found hiding in a closet, and the officers also discovered methamphetamine, a bag containing the chemicals necessary to manufacture methamphetamine, and a shotgun. The bag found in the closet contained the shotgun, what appeared to be methamphetamine, and the chemicals and various paraphernalia necessary to manufacture methamphetamine. In a letter Hart later wrote to Holmes, he indicated that the shotgun ("the heat") was "in your room in my bag." On cross-examination, Hall admitted that the shotgun and the bag were found in the bedroom Hart and Holmes had been sharing, but that Hart was found hiding in a different bedroom.

Absent Holmes' testimony, there is no direct evidence that Hart possessed or controlled the

drugs or gun, but there is some circumstantial evidence tending to link him to the charged offense. The corroborative evidence may be circumstantial, and it is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. *See Golden*, 851 S.W.2d 291; *Brown*, 672 S.W.2d 487; *Reynolds v. State*, 489 S.W.2d 866 (Tex. Crim. App. 1972). The defendant's presence at or near the scene of the crime, when coupled with other suspicious circumstances, may be sufficient to link the defendant to the crime. *Brown*, 672 S.W.2d at 489. This is not a case where Hart was merely present at the time of the arrest. Rather, he was on the run from a conviction for manufacturing methamphetamine; he hid in a closet when the police arrived; and a bag containing a gun, methamphetamine, and the chemicals necessary to manufacture methamphetamine were found in the bedroom he and Holmes were sharing. Hart's letter to Holmes about the gun being in his bag has some further tendency to connect him to the crime. We find sufficient corroborative evidence to support Holmes' testimony. Therefore, we overrule this point of error.

## III. Assessment of Attorney's Fees

The judgment against Hart includes an award of $1,500.00 in attorney's fees to the State against Hart. In his third and fourth points of error, Hart contends that there is legally and factually insufficient evidence to support the trial court's award of attorney's fees against him.[4] We agree.

---

[4]Hart also argues that there is insufficient evidence to find that he had financial resources to offset attorney's fees.

The Texas Code of Criminal Procedure allows the imposition of attorney's fees "if the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Vernon Supp. 2010). Here, the trial court found that Hart was indigent. There is no evidence supporting a finding that he is able to offset any of the costs of legal services provided. As the State candidly acknowledges, the assessment of attorney's fees is erroneous.

Accordingly, we find the evidence supporting the court's award of attorney's fees is legally insufficient. We sustain this point of error and modify the judgment to delete the attorney's fee award.

As modified, we affirm the judgment.


Jack Carter
Justice


Date Submitted:     September 20, 2010
Date Decided:       October 1, 2010

Do Not Publish