# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00428-CV

**Greg Abbott, in his Official Capacity as Governor of Texas; State of Texas; and Ken Paxton, in his Official Capacity as Attorney General of Texas, Appellants**

**v.**

**La Joya Independent School District, Edinburg Consolidated Independent School District, Hidalgo Independent School District, Brownsville Independent School District, Crowley Independent School District, Edcouch-Elsa Independent School District, Lasara Independent School District, Pharr-San Juan-Alamo Independent School District, DeSoto Independent School District, Lancaster Independent School District, Ben Bolt-Palito Blanco Independent School District, Fort Worth Independent School District, El Paso Independent School District, Shanetra Miles-Fowler, Elias Ponvert, Kim Taylor, Austin Community College District, Houston Independent School District, Dallas Independent School District, Northside Independent School District, Austin Independent School District, Aldine Independent School District, and Spring Independent School District, Appellees**

---

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-003897, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A group of independent school districts and other related parties sued Greg Abbott, Governor of Texas; Ken Paxton, Texas Attorney General; and the State of Texas seeking declaratory and injunctive relief to prevent enforcement of GA-38, Governor Abbott's executive order prohibiting local governmental entities and officials from requiring face coverings in response to the COVID-19 pandemic. After the trial court denied their plea to the jurisdiction and granted a temporary injunction in favor of the plaintiffs, Governor Abbott, Attorney General

Paxton, and the State of Texas filed this interlocutory appeal, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a)(4), (8), advancing the same arguments that we recently rejected in *Abbott v. Harris County*, __ S.W.3d __, No. 03-21-00429-CV, 2022 Tex. App. LEXIS 64 (Tex. App.—Austin Jan. 6, 2022, pet. filed). Because we conclude that the trial court had subject-matter jurisdiction over the dispute and that it did not abuse its discretion in granting temporary injunctive relief, we affirm the trial court's orders.

## BACKGROUND

Chapter 418 of the Texas Government Code, known as the Texas Disaster Act, establishes a detailed, comprehensive framework that, in the case of a disaster, allocates powers, duties, and responsibilities across various levels of state government and multiple agencies. *Ector Cnty. Alliance of Bus. v. Abbott*, No. 11-20-00206-CV, 2021 Tex. App LEXIS 7492, at *3 (Tex. App.—Eastland Sept. 9, 2021, no pet.) (mem. op.); *see* Tex. Gov't Code §§ 418.001-.307. Among the stated purposes of the Act are to (1) clarify and strengthen the roles of the governor, state agencies, the judicial branch of state government, and local governments in prevention of, preparation for, response to, and recovery from disasters; (2) authorize and provide for cooperation in disaster mitigation, preparedness, response, and recovery; and (3) authorize and provide for coordination of activities relating to disaster mitigation, preparedness, response, and recovery by agencies and officers of this state, and similar state-local, interstate, federal-state, and foreign activities in which the state and its political subdivisions may participate. Tex. Gov't Code § 418.002 ("Purposes").

On March 13, 2020, Governor Abbott, in his official capacity, issued a statewide disaster declaration, certifying that "the novel coronavirus (COVID-19) poses an imminent threat

2

of disaster for all Texas Counties," and he has renewed that proclamation every month since. *See id.* §§ 418.011 (charging governor with meeting the "dangers to the state and people presented by disasters"), .014(a), (c) (providing that governor may declare state of disaster within defined geographic area "if the governor finds that a disaster has occurred or that the occurrence or threat of disaster is imminent"). In addition, the Governor has issued a series of executive orders, for the stated purpose of, among other things, "protecting the health and safety of Texans, ensuring uniformity throughout Texas, and achieving the least restrictive means of combating the evolving threat to public health by adjusting social-distancing and other mitigation strategies." *See id.* § 418.012 (empowering governor to issue executive orders, proclamations, and regulations, which "have the force and effect of law").

On July 29, 2021, citing his authority under the Act, Governor Abbott issued the executive order that is the subject of this dispute, Executive Order GA-38 (GA-38). In relevant part, GA-38 states, "No governmental entity, including a county, city, school district, and public health authority, and no governmental official may require any person to wear a face covering or to mandate that another person wear a face covering." GA-38 also states that it "supersede[s] any face-covering requirement imposed by any local governmental entity or official." Finally, relevant here, GA-38 purports to suspend several specific statutes "to the extent necessary to ensure that local government entities or officials do not impose any such face-covering requirements," including certain provisions in the Texas Disaster Act, pertaining to local officials' powers under the Act, and "[a]ny other statute invoked by any local governmental entity or official in support of a face-covering requirement."

In August 2021, a group of thirteen independent school districts (collectively, the "School District Plaintiffs") filed suit against Governor Abbott, later adding as defendants

3

Attorney General Paxton and the State of Texas (collectively, the "State Defendants"), to challenge the validity of GA-38. Six additional school districts, a community college district, and three parents later intervened as co-plaintiffs (collectively, the "Intervenors").[1] According to the School District Plaintiffs' live petition, beginning in the spring of 2020, school districts throughout Texas used remote instruction to protect the health and safety of their students from the spread of COVID-19. However, education professionals subsequently discovered that this use of remote instruction was resulting in learning loss for some students. With the introduction of the COVID-19 vaccine in early 2021, and the number of deaths, hospitalizations, and infections declining, school districts began to transition from remote instruction back to in-person classroom instruction.

The School District Plaintiffs further allege that as the 2021-22 school year approached, the COVID-19 vaccine still had not been approved for children under the age of twelve, and due to the highly transmissible Delta variant, the number of COVID-19 infections in Texas was increasing rapidly. Consequently, many school districts, including those in this suit, adopted face-covering requirements to prevent further spread of COVID-19 while providing a majority of their students with in-person classroom instruction. The face-covering requirements undisputedly violate GA-38's ban on face-covering mandates.

In the suit, the School District Plaintiffs and Intervenors seek temporary and permanent injunctive relief to enjoin the State Defendants from enforcing GA-38 "to prevent any Texas school district from adopting a local mask mandate for its public schools or retaliating

---

[1] We will refer to the plaintiff and intervenor independent school districts and the intervenor community college district, collectively, as "the school districts."

4

against any Texas school district that adopts a local mask mandate."[2] They also seek declarations that (1) the Governor exceeded his authority under the Act and, consequently, acted ultra vires in issuing GA-38 and, more specifically, the portion of GA-38 prohibiting governmental entities and officials, such as school districts, from adopting face-covering requirements, and (2) "[t]he Governor has no authority [under Section 418.016 of the Act] to suspend the statutes that give local school boards the authority to govern and oversee the management of public schools." Alternatively, the School District Plaintiffs and Intervenors seek a declaration that Section 418.016 of the Act violates the Texas Constitution.

In response, the State Defendants filed a plea to the jurisdiction asserting that the School District Plaintiffs and Intervenors lack standing to challenge GA-38 and that the suit is barred by sovereign immunity. The trial court conducted an evidentiary hearing on the School District Plaintiffs' and Intervenors' request for temporary injunctive relief. On August 27, 2021, the trial court signed orders denying the State Defendants' plea to the jurisdiction and granting temporary injunctive relief. This appeal followed.[3]

---

[2] The intervenor parents and intervenor community college district assert claims identical to those asserted by the eight original school district plaintiffs. The intervenor school districts assert claims identical to those pleaded by the original school district plaintiffs, but also bring additional claims. The trial court permitted the intervenor school districts to participate in the temporary-injunction hearing only to the extent that their claims were the same as those that had been asserted by the other parties.

[3] Because it implicates subject-matter jurisdiction, we usually review a trial court's ruling on a plea to the jurisdiction before reviewing a trial court's ruling on the merits. In this case, however, the State Defendants first present their arguments as to the trial court's temporary-injunction ruling, many of which overlap with their jurisdictional arguments. For the reasons set out later in this opinion, we will ultimately affirm the trial court's jurisdictional ruling; consequently, we begin our discussion by considering the State Defendants' challenge to the trial court's decision to grant temporary injunctive relief.

5

**TEMPORARY INJUNCTIVE RELIEF**

"A temporary injunction is an extraordinary remedy and does not issue as a matter of right." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)). The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Id.* To obtain relief, the party applying for a temporary injunction "must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable[,] imminent, and irreparable injury in the interim." *Abbott v. Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d 911, 916 (Tex. 2020) (quoting *Butnaru*, 84 S.W.3d at 204).

The decision to grant a temporary injunction lies in the sound discretion of the trial court and is subject to reversal only for a clear abuse of that discretion. *Butnaru*, 84 S.W.3d at 204. In resolving evidentiary matters, a trial court does not abuse its discretion "if some evidence reasonably supports the court's ruling." *Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d at 916 (quoting *Henry v. Cox*, 520 S.W.3d 28, 34 (Tex. 2017)). But the trial court has no discretion to incorrectly analyze or apply the law. *Id.* (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)).

***Probable Right to Recovery***

On appeal, the State Defendants argue that the trial court abused its discretion in granting temporary injunctive relief because the School District Plaintiffs and Intervenors failed to prove that they are likely to prevail on the merits of their ultra vires claim, the substantive claim underlying their requests for declaratory and injunctive relief. *See Butnaru*, 84 S.W.3d

at 204. A plaintiff bringing an ultra vires claim must "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Env'tl Quality*, 307 S.W.3d 505, 515 (Tex. App.—2010, no pet.) (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016).

The State Defendants contend that the School District Plaintiffs and Intervenors failed to establish a probable right to relief on their ultra vires claims because, in their view, the Governor validly exercised his authority under the Texas Disaster Act when he issued GA-38, including the portion of GA-38 that prohibits local governmental entities and officials from "requir[ing] any person to wear a face covering or . . . mandat[ing] that another person wear a face covering." According to the State Defendants, the Governor's authority to preempt face-covering requirements imposed by local governmental entities derives from broad language in the Act, namely: (1) Section 418.011, which charges the Governor with meeting the "dangers to the state and people presented by disasters"; (2) Section 418.015(c), which designates the Governor as "commander in chief" in addressing statewide disasters; (3) Section 418.018(c), which provides that "[t]he governor may control ingress and egress to and from a disaster area"; and (4) Section 418.012, which states that executive orders issued by the Governor under the Act have "the force and effect of law."

While this appeal was pending, we considered the scope of the Governor's authority under the Act in an analogous case, *Harris County*, 2022 Tex. App. LEXIS 64, at

7

*16-26. In that case, Harris County and several Harris County officials challenged GA-38's ban on face-covering requirements as constituting ultra vires conduct. As in the case now before us, we were tasked in *Harris County* with deciding whether the Governor's authority under the Act includes the authority to prohibit local governmental entities and officials from implementing COVID mitigation measures that the Governor views as more restrictive than necessary, such as face-covering requirements. *Id.* at *19-20. Applying well-established rules of statutory construction, we rejected the Governor's assertion that certain provisions of the Act—the same provisions now relied on to defeat the claims brought in this case—demonstrate that the legislature intended to give the Governor absolute authority to limit the ability of local governmental entities and officials to respond to disasters. *Id.* at *20, 24. We determined that, instead, whether GA-38's prohibition of face-covering mandates constituted ultra vires conduct turned on whether the prohibition fell within the scope of suspension allowed under Section 418.016(a)—a provision in the Act providing the Governor with a limited power to suspend "provisions of any regulatory statute prescribing the procedures for conduct of state business."[4] *Id.* at *24; *see* Tex. Gov't Code § 418.016(a). Applying the plain language of the Act, we concluded that the Governor's authority to suspend certain statutes under Section 418.016(a) did not include the authority to suspend the statutes relied on by the Harris County parties in issuing their respective face-covering requirements. *Harris County*, 2022 Tex. App. LEXIS 64, at *26.

---

[4] Section 418.016(a) states:

> The Governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business or the orders or rules of a state agency if strict compliance with the provisions, orders, or rules would in any way prevent, hinder, or delay necessary action in coping with a disaster.

Tex. Gov't Code § 418.016(a).

As a result, the trial court reasonably concluded that Harris County and the county officials established a probable right of recovery on their ultra vires claim. *Id.*

For the reasons previously set forth in our opinion in *Harris County*, we again conclude that the Governor does not possess absolute authority under the Texas Disaster Act to preempt orders issued by governmental entities and officials. *See id*. at \*20-24; *see Abbott v. Jenkins*, No. 05-21-00733-CV, 2021 Tex. App. LEXIS 9460, at \*29 (Tex. App.—Dallas Nov. 22, 2021, pet. filed) (mem. op.) (construing Act and concluding that governor's executive orders do not trump county judge's order). Consequently, as in *Harris County*, whether the Governor's ban on face-covering requirements constitutes ultra vires conduct as it relates to the face-coverings requirements adopted by the school districts turns on whether the ban falls within the scope of suspension allowed under Section 418.016(a). *See* 2022 Tex. App. LEXIS 64, at \*24.

The State argues that, pursuant to the Governor's authority under Section 418.016(a), GA-38 validly suspends "[a]ny statute invoked by any local governmental entity or official in support of a face-covering requirement," including any provisions in the Education Code that the school districts relied on in issuing their face-covering requirements.[5] In response,

---

[5] For example, the school districts relied on Section 11.151(b), which states that with certain exceptions, the trustees of an independent school district

> have the exclusive power and duty to govern and oversee the management of public schools of the district. All powers and duties not specifically delegated by statute to the [Texas Education Agency] or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees.

Tex. Educ. Code § 11.151(b). In addition, under Section 37.102, "the board of trustees of a school district may adopt rules for the safety and welfare of students, employees, and property." *Id.* § 37.102. Finally, under Section 37.105, "a school administrator, school resource officer, or peace officer of a school district may refuse to allow a person to enter on or may eject a person

9

the School District Plaintiffs and Intervenors contend that the Governor's suspension power under Section 418.016(a), reasonably construed, does not include the power to suspend statutes that give school districts their local authority because these statutes are not "regulatory statutes" and do not "prescribe the procedures for conduct of state business." Tex. Gov't Code § 418.016(a) ("The Governor may suspend the provisions of any regulatory statute prescribing the procedures for conduct of state business . . . ."). For the reasons set out in *Harris County*, we agree with School District Plaintiffs and Intervenors.

As we explained in *Harris County*, the Governor's suspension power under Section 418.016 is limited to certain "regulatory statutes," and the term "regulate" ordinarily means "to govern or direct according to rule." *Harris County*, 2022 Tex. App. LEXIS 64, at *25 (citing Regulate, *Webster's Third New Int'l Dictionary* 1913 (2002); Regulate, *Black's Law Dictionary* (10th ed.)). Applying this definition, we concluded that the term "regulatory statute" does not include statutes that are "grant-of-authority statute[s], giving local authorities the leeway to act in their best independent judgment within the confines of their own jurisdictions." *Id.* Like the public-health statutes relied on by the local officials in *Harris County*, the provisions of the Texas Education Code relied on by the school districts in this case are "grant-of-authority" statutes, meaning they empower school districts and district officials to take actions to protect the safety and health of students, staff, and visitors but do not direct or require them to take any particular action, and thus are not "regulatory" statutes. *See id.* at *26.

In addition, Section 418.016(a) only allows the Governor to suspend the provisions of regulatory statutes "prescribing the procedures for conduct of state business." *See*

---

from property under the district's control if the person refuses to leave peaceably on request and [] the person poses a substantial risk of harm to any person." *Id.* § 37.105.

Tex. Gov't Code § 418.016(a). Although the Act does not define this phrase, or even the phrase "state business," we disagree with the State's suggestion that a statute is "prescribing the procedures for conduct of state business" anytime it is invoked by a local governmental entity or local official to deviate from a state-related activity, such as a state-disaster response. Under that proposed construction, *any* statute that in any way would "prevent, hinder, or delay necessary action in coping with a disaster" would be subject to suspension, and the qualifying language "regulatory" and "prescribing the procedure for conduct of state business" would be meaningless. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) ("The Court must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous."). As we recognized in *Harris County*, "[i]f the Legislature had intended Section 418.016(a) to reach ordinances and businesses of local governments, Section 418.016(a) would have stated an application to 'political subdivisions' or 'local governmental entities,' which are terms defined in the Act*." Harris County*, 2022 Tex. App. LEXIS 64, at *26 (quoting *Abbott v. City of San Antonio*, __S.W.3d__, No. 04-21-00342-CV, 2021 Tex. App. LEXIS 9129, at *15-16 (Tex. App.—San Antonio Nov. 10, 2021, pet. filed)). We conclude that the Education Code provisions granting broad authority to local school districts and community college districts to govern and oversee public schools within their districts do not prescribe "the procedures for conduct of state business."

In sum, the Texas Disaster Act does not grant the Governor absolute authority to preempt orders issued by local governmental entities, such as school districts, and the provisions of the Education Code relied on by the school districts in issuing their respective face-covering requirements are not subject to suspension under Section 418.016(a) of the Act. *See Harris County*, 2022 Tex. App. LEXIS 64, at *26; *City of San Antonio*, 2021 Tex. App. LEXIS

11

9129, at * 17 (concluding that governor's power under section 418.016(a) "does not include the power to prohibit face-covering mandates that local governments may adopt to respond to public-health conditions or the power to suspend public-health statutes authorizing local governments to act for the benefit of public health"). As a result, the trial court reasonably concluded that the Plaintiffs and Inventors have a probable right of recovery on their claim that the Governor engaged in ultra vires conduct by issuing an executive order, GA-38, "supersed[ing] any face-covering requirement imposed by any local governmental entity or official."[6]

### Irreparable Harm

The State Defendants also argue that the School District Plaintiffs and Intervenors failed to present sufficient evidence to demonstrate that, absent an injunction, they would suffer a "probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204. "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary interest." *Id*. Based on the record before us, we conclude that the School District Plaintiffs and Intervenors met their burden of demonstrating irreparable harm. *See Anti-Defamation League Austin, Sw. & Texoma Regions*, 610 S.W.3d at 916 ("In resolving evidentiary matters, a trial court does not abuse its discretion 'if some evidence reasonably supports the court's ruling.'").

At the temporary-injunction hearing, the School District Plaintiffs and Intervenors presented numerous witnesses, including doctors, school board members, superintendents, and

---

[6] Because we conclude that the School District Plaintiffs and Intervenors met their burden to establish a probable right to relief on their claim that the Governor exceeded his authority under the Disaster Act, we need not consider whether they established a probable right to relief on their alternative claim that the Act is unconstitutional because it grants such authority. *See* Tex. R. App. P. 47.1.

parents, who testified about the need for face-covering requirements in schools. From the undisputed evidence, the trial court could have reasonably determined that (1) COVID-19 represents a threat to the health of school staff, students, and visitors, as well as the community at large; (2) the Delta variant is highly contagious and has caused an increase in COVID-19 infections; (3) when COVID-19 spreads in schools and is uncontrolled, schools must either close or revert to virtual instruction, which results in learning loss to some students; (4) when teachers are absent from school due to contracting COVID-19, the school district pays for substitute teachers; (5) when students are unable to attend in-person school due to contracting COVID-19, the district's state funding is negatively impacted; (6) the use of face coverings is an effective tool in mitigating the spread of COVID-19; and (7) the ability to require face-coverings is vital to containing the spread of COVID-19 in the school setting.[7] Because GA-38 prohibits schools from requiring the use of face covering as a means of controlling the spread of COVID-19 within their jurisdictions, it inflicts an irreparable injury on school districts and community college districts. *See Harris County*, 2022 Tex. App. LEXIS 64, at *30 (concluding that GA-38 inflicted irreparable harm on county and county officials because it prevented them from enforcing local orders requiring use of face coverings, citing *Texas Ass'n of Bus. v. City of Austin*, 565 S.W.3d 425, 441 (Tex. App.—Austin 2018 pet. denied)).

---

[7] The State Defendants argue that because GA-38 does not prohibit individuals from wearing face-coverings, the Plaintiffs and Intervenors were required to present evidence demonstrating that voluntary face-covering compliance would not be as effective as a face-covering mandate. However, the trial court heard evidence from one medical professional (the medical director for Austin Public Health and Health Authority Board of Travis County) that, due to the manner in which COVID-19 spreads, masks are most effective in mitigating the virus when everyone is wearing them. Based on this, the trial court could have reasonably inferred that requiring face coverings is more effective in mitigating the spread of COVID-19 than allowing individuals to choose whether or not to wear face coverings.

The State Defendants assert that the trial court abused its discretion in determining that the School District Plaintiffs and Intervenors will suffer "irreparable harm" because it failed to "weigh the countervailing interest" against injunctive relief. *See NMTC Corp. v. Conarroe*, 99 S.W.3d 865, 868 (Tex. App.—Beaumont 2003, no pet.). Specifically, according to the State Defendants, the trial court failed to consider the State's interest in allowing the Governor to carry out his duties under the Act as commander-in-chief and in enforcing state law. However, as discussed above, the Texas Disaster Act does not grant the Governor absolute authority to prevent governmental entities and officials from requiring the use of face coverings to combat a pandemic. In addition, the State Defendants did not present any evidence to show how the State would be adversely impacted by the requested temporary injunction. The record before us does not establish that the trial court failed to balance equities or that the evidence is insufficient to support the trial court's implied finding that the equities weigh in favor of granting injunctive relief.

### *Status Quo*

Finally, we consider the State Defendants' argument that the trial court abused its discretion because the School District Plaintiffs and Intervenors failed to establish that the temporary injunction was necessary to preserve the status quo. In this context, "status quo" means "the last peaceable, non-contested status which preceded the pending controversy." *Clint Ind. Sch. Distr. v. Marquez*, 487 S.W.3d 538, 556 (Tex. 2016).

As previously discussed, the School District Plaintiffs and Intervenors demonstrated a probable right to relief on their claim that the Governor exceeded his authority in banning school districts from issuing face-covering requirements in response to COVID-19. The

14

temporary injunction, as granted by the trial court, prevents the Governor from enforcing that unlawful ban. Nevertheless, the State Defendants contend that that the injunction does not preserve the status quo because the "the status quo existed at least since May [2021] when the Governor issued GA-36, which as a general matter prohibited localities from imposing any manner of face-covering requirements." However, as we pointed out in *Harris County*, "[c]ontinuation of illegal conduct cannot be justified as preservation of the status quo." 2022 Tex. App. LEXIS 64, at \*31 (citing *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (orig. proceeding)). "If GA-38 is determined to be ultra vires and invalid, GA-36 would be ultra vires and invalid for the same reason." *Id.* Consequently, GA-36 cannot constitute the status quo as a matter of law, and the trial court's temporary injunction returns the parties to the position they were in prior to the allegedly ultra vires conduct.

The trial court did not abuse its discretion in granting the temporary injunction.

## PLEA TO THE JURISDICTION

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction without regard to whether the asserted claims have merit. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Because whether a trial court has subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). In reviewing a plea to the jurisdiction, we begin with the plaintiff's live pleadings and determine if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause.

15

*Miranda*, 133 S.W.3d at 226. In assessing whether the plaintiff has met this burden, we construe the plaintiff's pleadings liberally, taking all assertions as true, and look to the plaintiff's intent. *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised. *City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 554, 555 (Tex. 2000). "Our ultimate inquiry is whether the plaintiff's pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W3d 89, 94 (Tex. App.—Austin 2011, no pet.).

### *Sovereign Immunity*

In this case, the State Defendants argue that the trial court lacks subject-matter jurisdiction over this case for three reasons. First, the State Defendants assert that the claims brought by the School District Plaintiffs and Intervenors implicate sovereign immunity and that the allegations fail to demonstrate that the suit falls within the ultra vires exception. Sovereign immunity implicates a court's subject-matter jurisdiction, generally barring suit against the State and its subdivisions. *University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010). However, a claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in ultra vires conduct. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019).

Whether the School District Plaintiffs and Intervenors have sufficiently alleged that Governor Abbott engaged in ultra vires conduct for the purpose of establishing subject-matter jurisdiction turns on the issue of whether the Governor's authority under the Texas

16

Disaster Act includes the authority to preclude governmental entities, like school districts, from requiring face coverings.[8]  We have already decided this question of law in concluding that the School District Plaintiffs and Intervenors met their burden to establish a probable right to relief on their ultra vires claim for the purpose of obtaining temporary injunctive relief.  For the reasons set forth in that portion of our opinion upholding the trial court's grant of temporary injunctive relief, we conclude the Act does not grant the Governor authority to prohibit school districts from implementing face-covering requirements and that, consequently, the School District Plaintiffs and Intervenors met their burden of pleading facts sufficient to demonstrate a valid ultra vires claim.

### *Standing*

Second, the State Defendants argue that the trial court lacks subject-matter jurisdiction because the School District Plaintiffs and Intervenors failed to establish that they have standing to bring their claims. [9]  *See Farmers Tex. Cnty. Mut. Ins. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020) ("Standing is a threshold requirement to maintaining a lawsuit."); *Heckman*, 369 S.W.3d at 150 ("A court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it.").  Specifically, the State Defendants contend that the School District Plaintiffs and Intervenors have not demonstrated that their alleged injury "is likely to be redressed by the requested relief," a requirement for establishing standing.  *See Heckman*,

---

[8]  In their plea to the jurisdiction, the State Defendants did not challenge the existence of any of the underlying facts alleged in the School District Plaintiffs' and Intervenors' pleadings.

[9]  The State Defendants also separately asserted that the three parents lack standing because their "alleged injuries are more remote and speculative than the [school districts']" and that their injury is "a quintessential generalized grievance."  On appeal, the State Defendants have not challenged the trial court's jurisdictional ruling as to the three parents.

369 S.W.3d at 154-55 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The State Defendants assert that neither the Governor nor the Attorney General has any power to enforce GA-38 or to seek penalties under GA-38 and that, even if successful on their claims, the school districts would still be subject to prosecution by local district attorneys. In short, the State Defendants contend that they are the wrong defendants to this suit and that "an injunction prohibiting [them] from enforcing GA-38—something they cannot do—would not redress any of the harms that the Plaintiffs and Intervenors allege."

As we explained in *Harris County*, publicly available records reveal that the State Defendants have filed numerous lawsuits seeking to prevent local governments and school districts from enforcing orders that, in the view of the State Defendants, are invalid and unenforceable because they conflict with emergency orders issued by the Governor, including GA-38. *See Harris County*, 2022 Tex. App. LEXIS 64, at *11-12 (collecting cases) By seeking a declaration that the Governor's actions are ultra vires, the School District Plaintiffs and Intervenors are complaining about the validity of the executive order itself, as opposed to the threat of enforcement for non-compliance. *Id.* at *12. If successful on their ultra vires claim, the declaratory and injunctive relief sought would allow the school districts to exercise their authority to require the wearing of face coverings and would prevent the State from interfering with that authority. *Id.*; *see Jenkins*, 2021 Tex. App. LEXIS 9460, at *17 (concluding that county judge challenging GA-38 met redressability element of standing because requested relief, if granted, would allow him "to once again exercise his statutory authority, including his authority to impose mask mandates within his jurisdiction"). We conclude that the School District Plaintiffs and Intervenors have sufficiently demonstrated that there is a live controversy

between the parties concerning the validity of GA-38 and that the declaratory and injunctive relief sought, if successful, would resolve this controversy.

***Texas Government Code, Section 22.002(c)***

Finally, the State Defendants assert that the trial court lacks jurisdiction to issue injunctive relief in this case because, in their view, only the Texas Supreme Court can enjoin executive officers, including the Governor and Attorney General. In support of their argument, the State Defendants rely on Section 22.002(c) of the Government Code, which states:

> Only the supreme court has the authority to issue a writ of mandamus or injunction, or any other mandatory or compulsory writ or process, against any of the officers of the executive departments of the government of this state to order or compel the performance of a judicial, ministerial, or discretionary act or duty that, by state law, the officer or officers are authorized to perform.

Tex. Gov't Code § 22.002(c).

We disagree with the State Defendants assertion that only the Texas Supreme Court has jurisdiction to grant the relief requested by the School District Plaintiffs. By its terms, Section 22.002(c) vests the supreme court with exclusive jurisdiction "to compel [] performance." *Id.* A suit seeking to restrain an unlawful act, even by an officer of the executive, is not a suit to compel the performance of an act or duty. *Canales v Paxton*, No. 03-19-00259-CV, 2020 Tex. App. LEXIS 7941, at *5 (Tex. App.—Austin Sept. 30, 2020, pet. denied) (mem. op.).

Here, the School District Plaintiffs and Intervenors do not seek to compel the Governor or Attorney General to perform an act or duty that they are authorized by state law to perform. To the contrary, the School District Plaintiffs seek to prohibit the Governor and Attorney General from enforcing what they contend is an unlawful order. A district court has

19

original jurisdiction to issue an injunction prohibiting unlawful executive action. *See id.*; *see also Whitt v. Whitehead*, 900 S.W.2d 374, 375-76 (Tex. App.—Austin 1995, writ denied) (holding that district court has jurisdiction to enjoin enforcement of unlawful delegation). We conclude that Section 22.002(c) does not deprive the trial court of subject-matter jurisdiction over this dispute. *See Jenkins*, 2021 Tex. App. LEXIS 9460, at *18-19 (concluding that claim to enjoin governor from enforcing GA-38 was not claim "to order or compel action" and was not precluded by Section 22.002(c)).

Having rejected the State Defendants' jurisdictional arguments, we conclude that the trial court did not err in denying their plea to the jurisdiction.

## CONCLUSION

We affirm the trial court's orders denying the State Defendants' plea to the jurisdiction and granting the School District Plaintiffs' and Intervenors' requested temporary injunctive relief.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: March 17, 2022

20